[No. B190190. Second Dist., Div. Eight. Dec. 19, 2007.]

ALAN HIRANO, Plaintiff and Appellant, v.
DONALD HIRANO, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 1 and 3 of the Discussion.

**COUNSEL**

Law Offices of Rosario Perry, Rosario Perry and Jacqueline M. Fabe for Plaintiff and Appellant.

Keller, Price & Moorhead and Jeffrey C. Sparks for Defendant and Respondent.

**4** 

## OPINION

**RUBIN, J.**—Plaintiff and appellant Alan Hirano and defendant and respondent Donald Hirano are brothers. Appellant sued respondent for, among other things, conversion and trespass. We reversed a prior judgment entered against appellant (*Hirano v. Hirano* (Sept. 29, 2004, B167066) [nonpub. opn.]).[1] The current appeal is from a judgment entered after the trial court granted respondent's midtrial motion for nonsuit, the basis of which was that appellant could not prove damages. Appellant contends the judgment must be reversed because the trial court improperly excluded evidence of damages which, had it been admitted, would have allowed appellant to overcome nonsuit. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and respondent's mother owned a duplex, which she held in the name of her living trust. Mother lived with respondent in the front unit of the duplex while appellant lived in the back unit and used the garage as a music recording studio. Some time in 1997, mother amended the trust to make respondent the sole successor trustee and to direct that all trust assets should go to respondent after mother's death. Mother died in early 1998.

Meanwhile, after commencing eviction proceedings against appellant in December 1997, respondent was awarded possession of the property and appellant moved out of the duplex in March 1998.

On the day he moved out of the duplex, appellant and some friends packed a van with equipment that had been left at the music studio by some of appellant's clients; appellant left most of his own musical and recording equipment at the studio because he believed he would be able to come back and retrieve it later. But a few days after moving out, appellant was hospitalized for several months. When his subsequent efforts to contact respondent during that time were unsuccessful, appellant asked two friends, Aaron Sunday and Randy Green, to retrieve the equipment appellant had left behind at the duplex.[2] Appellant eventually learned that, without his permission, respondent had moved appellant's equipment out of the studio and appellant's former unit, and into respondent's unit.

---

[1] In our prior opinion, we noted that this is the third action between the brothers relating to ownership of a duplex. After respondent successfully sued appellant for unlawful detainer, appellant petitioned the probate court to remove respondent as trustee of their mother's trust. That matter was settled when respondent paid appellant $20,000.

[2] On Sunday's return, he found the door to the music studio locked. On his second visit, Sunday noticed that the musical equipment he had previously seen in appellant's studio was now in respondent's unit. On a third visit, he found the door to the studio unlocked, but the studio empty. Sunday reported this information to appellant. Green, who had assisted appellant with the move, noticed that the studio was still filled with equipment when appellant locked

Appellant filed this action on March 22, 2000. When, after several continuances, it was called for trial on March 10, 2003, the trial court denied appellant's counsel's motion to once again continue the trial because appellant was in the hospital; it dismissed the action for failure to prosecute. (Code Civ. Proc., § 583.410.)[3] In an opinion filed on September 29, 2004, we reversed that judgment because the notice requirements of section 583.410 had not been met.

Following remand, a new trial date of September 12, 2005, was set. On the continued trial date of January 9, 2006, the trial court granted respondent's motion to preclude appellant from introducing any expert testimony because appellant had not complied with a demand for exchange of expert witness information respondent made in connection with the prior trial. After subsequently ruling that appellant could not testify as to his own opinion of the value of the property, the trial court granted respondent's motion for nonsuit, finding that appellant would be "unable to offer any evidence as to the fair market value of [his] property as was required to establish damages . . . ."

Appellant filed a timely notice of appeal.

## DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1. *Standard of Review**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *The Trial Court Improperly Excluded Appellant's Expert Witness Evidence*

Appellant contends the trial court prejudicially erred in precluding appellant from introducing the testimony of any expert witnesses. Appellant argues that his failure to timely exchange expert witness information prior to the 2002 "initial trial date" is irrelevant because discovery was reopened and a new "initial trial date" was set when the prior judgment was reversed. We agree.

 The mechanism for obtaining pretrial discovery of information concerning each party's expert witnesses was virtually the same in March 2002

_____

the door at the end of the day. When Green went back two days later, he saw that all of the equipment that had been in the studio was now in the front unit.

[3] All future undesignated statutory references are to the Code of Civil Procedure.

*See footnote, *ante,* page 1.

(the first initial trial date set before the judgment was reversed) and in September 2005 (the second initial trial date set after the judgment was reversed), only the code sections have changed.[4] That mechanism includes making a written demand for the mutual and simultaneous exchange of expert witness information on a specified date *no sooner than* 20 days after service of the demand or 50 days before the *initial* trial date, whichever is closer to the trial date. (§ 2034.230; see former § 2034, subd. (c), italics added.) Section 2034.260 sets forth the information that is required to be included in the exchange. (See former § 2034, subd. (f).) Section 2034.300 provides that, "on objection of any party who has made a complete and timely compliance with section 2034.260, the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to" comply with the requirements for exchanging expert witness information and making the expert available for deposition. (See former § 2034, subd. (j).)

But only the party who makes a demand for exchange of expert witness information and the party upon whom the demand is made are required to comply with the statutory procedures for exchanging expert witness information. (*West Hills Hospital v. Superior Court* (1979) 98 Cal.App.3d 656, 659 [159 Cal.Rptr. 645] (*West Hills*).)[5] From this, it reasonably follows that, where no demand is made by any party, no party is required to comply with the statutory exchange requirements.

■ It is now well settled that discovery automatically reopens following a mistrial, order granting new trial, or reversal on appeal. As our high court explained: "Each time an action is tried, the court sets an 'initial' (i.e., 'first' or 'beginning') date for the actual trial, and that date controls the discovery cutoff for the trial to which it relates. . . . A case does not have one everlasting 'initial' trial date, but may have a new 'initial' trial date corresponding to a scheduled retrial or new trial of the action. . . . Thus, after reversal 'the time clock for the "initial trial date" ' under the Discovery Act is reset." (*Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245 [92

---

[4] In March 2002, section 2034 governed pretrial discovery of expert witness information. In 2004, the discovery statutes were reorganized and section 2034 was replaced with sections 2034.010 through 2034.470, operative July 1, 2005. (Stats. 2004, ch. 182, § 23.)

[5] *West Hills* was a medical malpractice action involving three codefendants. Two of the codefendants addressed a demand for exchange of expert witness information to the plaintiff; they served a copy of the demand on the third codefendant. Based on the third codefendant's failure to participate in the exchange, the trial court granted the plaintiff's motion to preclude that codefendant from calling any expert witnesses at trial. The appellate court issued a peremptory writ of mandate vacating the order and directing the trial court to issue a new order denying the motion. The statutes at issue in *West Hills, supra,* 98 Cal.App.3d 656, were former section 2037 et seq., from which former section 2034 was derived. (See Stats. 1986, ch. 1336, §§ 2–3, pp. 4752–4758, operative July 1, 1987 [repealing former §§ 2037–2037.9, and replacing them with former § 2034].)

Cal.Rptr.2d 70, 991 P.2d 156], citations omitted (*Fairmont*); see *Beverly Hospital v. Superior Court* (1993) 19 Cal.App.4th 1289, 1295 [24 Cal.Rptr.2d 238] (*Beverly Hospital*).) There is no distinction between the different ways a new trial may come about, including mistrial, order granting new trial and following reversal on appeal. (See § 656 [defining new trial]; *Guzman v. Superior Court* (1993) 19 Cal.App.4th 705, 707–708 [23 Cal.Rptr.2d 585].)

Here, after first initial trial date was set for March 2002, respondent served appellant with a demand for exchange of expert witness information pursuant to former section 2034, subdivision (a); respondent subsequently served appellant with its expert witness information pursuant to former section 2034, subdivision (f). Respondent thereafter sought to preclude appellant, pursuant to former section 2034, subdivision (j), from introducing at trial any expert opinion evidence on the grounds that appellant had failed to comply with the expert witness demand.

After the judgment was reversed, a new trial date was initially set for September 12, 2005. Neither appellant nor respondent made a demand for exchange of expert trial witnesses after the new initial trial date was set (see § 2034.220 [demand for exchange of expert trial witness information shall be made 10 days after initial trial date has been set, or 70 days before that trial date]); accordingly, there was no exchange of expert witness information (see § 2034.230 [expert witness information exchange shall be set for a date that is 50 days before initial trial date or 20 days after service of demand, whichever is closer to the trial date]).

Although no demand had been made by either party, in a faxed letter to respondent's counsel dated December 21, 2005, appellant's counsel advised that appellant had "retained an expert witness pursuant to the reopening of discovery since the appeal was granted." The letter identified the expert as Steve McNeil of Mamba Sound & Recording/Mac West Group, and offered to make him available for deposition.

That same day, respondent filed a "Notice of Renewal" of his motion in limine to preclude appellant from introducing any expert witness evidence, to which he attached the original motion filed before the first trial. Appellant filed a "Notice of Renewal" of his opposition to the motion, to which he attached the original opposition filed before the first trial.

At the January 9, 2006 hearing on the renewed motion, appellant argued that discovery had reopened as a result of the reversal of the prior judgment. Since respondent did not file a new demand for exchange of expert witness information in conformance with section 2034.220, appellant was not re-quired to exchange expert witness information. The trial court granted

respondent's motion to exclude expert witness testimony, reasoning that respondent had made a demand for exchange of expert witness information in connection with the 2002 trial date, appellant did not comply with that demand and did not request leave to make a "late exchange" in connection with the new trial. The trial court erred.

■ When the prior judgment was reversed, the matter remanded and a new initial trial date set, discovery was automatically reopened. (*Fairmont, supra,* 22 Cal.4th at p. 250; *Beverly Hospital, supra,* 19 Cal.App.4th 1289.) Because neither party made a section 2034.210 demand for exchange of expert witness information in connection with the new initial trial date, neither was required to comply with section 2034.260. (*West Hills, supra,* 98 Cal.App.3d at p. 660.) Accordingly, the trial court erred in excluding appellant's expert witness evidence on the grounds that appellant failed to make a timely exchange of expert witness information. Because the improperly excluded expert witness evidence regarding damages could have enabled appellant to overcome the nonsuit, the judgment must be reversed.[6] (*Stonegate, supra,* 144 Cal.App.4th at p. 746.)

We are not persuaded to the contrary by respondent's argument that *Fairmont* is inapplicable to this case because remand for a trial after reversal of a judgment of dismissal, as occurred here, is not the same as the "remand for a *new* trial after reversal of a judgment on appeal" discussed by the court in *Fairmont.* (*Fairmont, supra,* 22 Cal.4th at p. 247, italics added.) As we understand respondent's argument, it is that the court in *Fairmont* intended to apply the rule that reversal on appeal automatically reopens discovery and resets the discovery timeclock only to reversal of judgments entered after a trial on the merits because; as such, where there has been no trial in the first instance, there can be no "new" trial. Respondent's exceedingly narrow reading of *Fairmont* is belied by that court's articulation of the reason for the rule: "Particularly in the case of a new trial following a dispositive judgment, e.g., on a demurrer or summary judgment, that was entered before the initial cutoff date for discovery, there will have been little or no opportunity for full discovery of facts involving issues or defenses that must now be addressed and litigated by the parties. For example, a party unsuccessfully opposing an early motion for summary judgment based on the statute of limitations, later

---

[6] As the court in *Fairmont* observed, discovery in the event of a new trial is not unlimited. For example, a natural person may be deposed only once during the run of the litigation (Code Civ. Proc., § 2025, subd. (t)); specially prepared interrogatories and requests for admission are limited (§§ 2030, subd. (c)(1), 2033, subd. (c)(1)); and parties may seek protective orders from discovery that is unreasonably cumulative, duplicative, unduly burdensome or expensive in light of discovery completed in connection with any prior trial. (*Fairmont, supra,* 22 Cal.4th at pp. 254–255.)

reversed on appeal, is unlikely to have had sufficient time to complete discovery on the merits before the motion was granted." (*Id.* at p. 253.) Thus, the court in *Fairmont* expressly contemplated that the rule reopening discovery following a reversal on appeal would apply to all judgments reversed on appeal, whether or not preceded by a trial on the merits. (See also *Beverly Hospital, supra,* 19 Cal.App.4th at p. 1296 [rejecting argument that the rule applied only to a completed trial and a mistrial was equivalent to no trial at all: "no rational distinction between a mistrial, order granting new trial and a reversal on appeal for purposes of restarting the discovery clock."].)[7]

■ The rule that discovery is automatically reopened following reversal on appeal is particularly applicable to expert witness discovery. This is because, as the court in *Fairmont* explained, in any trial of the matter following reversal of a prior judgment, the parties are not limited to the evidence introduced at a prior trial, but are entitled to introduce additional evidence. (*Fairmont, supra,* 22 Cal.4th at p. 253.) As applied to expert witnesses, this rule means that, following reversal of a prior judgment, the parties are entitled to change expert witnesses—in fact, may be forced to do so because of the current unavailability of an expert selected perhaps years earlier; moreover, the parties may even elect to use an expert when they had not done so before. (See *Beverly Hospital, supra,* 19 Cal.App.4th at p. 1296 [automatic reopening of discovery, including deposing new experts, is consistent with policy of facilitating trial preparation, expediting trial and encouraging settlement because it will be more focused, intelligent and may lead the parties to rethink their settlement positions].)

We also find respondent's reliance on *Bonds v. Roy* (1999) 20 Cal.4th 140 [83 Cal.Rptr.2d 289, 973 P.2d 66] to be misplaced. *Bonds* did not involve discovery of expert witness information in the context of a new trial following reversal of a judgment.

3. *The Trial Court Improperly Excluded Evidence of Appellant's Opinion of the Value of His Property*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7] *Fairmont* referred to cases that were resolved in the trial court before the initial discovery cutoff date. We realize that the dismissal in the present case was *after* discovery was closed. The point we make in the text is that *Fairmont* acknowledged the reopening of the discovery timeclock applied even where the appellate court's reversal does not follow a full trial on the merits.

[*]See footnote, *ante,* page 1.

## DISPOSITION

The judgment of nonsuit is reversed. Appellant shall recover his costs on appeal.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied January 17, 2008, and on January 2, 2008, the opinion was modified to read as printed above.