Filed 7/31/13  Behrmann v. Baker CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN R. BEHRMANN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JOEL R. BAKER et al., <br><br> Defendants and Respondents. | 2d Civil No. B241830 <br> (Super. Ct. No. 1341686) <br> (Santa Barbara County) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING (NO CHANGE IN JUDGMENT) |

THE COURT:

IT IS ORDERED that the opinion filed herein on July 3, 2013, be modified as follows:

1.  On page 2, second line from the top of the page, after the sentence ending with the citation to *Nally*, add the following sentence:

We set forth only those facts relevant to the issues dispositive of this appeal.

2.  On page 2, first full paragraph, modify the first sentence to read as follows:

In the mid-1990s, Baker worked as a financial planner and created a proprietary investment "tool" he called the "Financial Independence Plan" (FIP).

3.  On page 2, first full paragraph, line 6, replace "private charity" with:  qualified community trust (charity)

4.  On page 2, first full paragraph, third line from the bottom, delete the word "private."

5.  On page 2, second full paragraph, line 4, replace "they never met Baker" with:  they never met Baker in person

6.  On page 2, second full paragraph, line 5, replace "once years later" with:  a few times

7.  On page 2, second full paragraph, line 5, before the sentence starting with "Baker provided the agents" insert the following sentence:

The 117-page FIP the agents provided the Behrmanns was generic except for 20 pages illustrating the specific returns and tax savings the FIP would yield for various levels of investment; Baker's name was on eight of those pages, and the agents' names were on the remaining 12.

8.  On page 2, second full paragraph, second line from the bottom, replace "Baker provided the agents" with:  Baker also provided the agents

9.  On page 2, third full paragraph that carries over to page 3, line 5, delete the word "private."

10.  On page 3, carry-over paragraph from page 2, add to the end of the paragraph the following sentence:

Baker received no compensation from NHF during the life of the split-dollar policies.

11.  On page 3, first full paragraph, line 5, following the sentence ending in "three insurance policies" add the following sentence:

When the Behrmanns cashed out the policies in 2002, NHF assessed a $9,452 marketing service fee and placed $3,860 of that amount into a charity for Baker's benefit.

12. On page 4, third full paragraph, line 4, delete the phrase "Baker responds that the trial court properly rejected this claim" and replace it with:

Baker had urged the trial court, in his nonsuit motion, to reject this claim

13. On page 4, third full paragraph, second line from the bottom, add the following footnote after the word "losses":

To be sure, Baker placed the causation argument under a subheading in his nonsuit motion dealing with the Behrmanns' negligence claim rather than their CLRA claim. However, Baker asserted in that argument that he did not cause any of the Behrmanns' damages. Thus, Baker adequately challenged the Behrmanns' evidence of causation in his nonsuit motion. (*Carson v. Facilities Dev. Co.* (1984) 36 Cal.3d 830, 839.) Even if Baker had not, it is nevertheless "clear" that the Behrmanns' insufficient proof of causation "could not have been remedied had it been called to [their] attention by the motion" for two reasons: (1) the nonsuit motion was made after the Behrmanns had presented all of their evidence; and (2) the Behrmanns were unable to persuade the trial court that they had presented sufficient evidence of causation when the trial court raised the issue at the hearing on the nonsuit motion. (*Lawless v. Calaway* (1944) 24 Cal.2d 81, 94.)

This change will require renumbering of footnotes.

14. On page 4, third full paragraph, remove the last sentence and replace it with the following:

The trial court did not decide the first issue, and instead ruled that nonsuit was proper on the causation element alone. This was not error.

15. On page 7, first full paragraph, lines 4 and 7, delete the word "private."

3

16.  On page 7, third full paragraph, line 4, delete the word "private."

There is no change in the judgment.

Plaintiffs and Appellants' petition for rehearing is denied.

Filed 7/3/13 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN R. BEHRMANN et al., | 2d Civil No. B241830 |
| Plaintiffs and Appellants, | (Super. Ct. No. 1341686) (Santa Barbara County) |
| v. | |
| JOEL R. BAKER et al., | |
| Defendants and Respondents. | |

Plaintiffs John and Nancy Behrmann (the Behrmanns) sued Joel Baker and his related companies (collectively Baker) for damages allegedly caused by a life insurance-based investment tool Baker invented and by breach of the fiduciary duty Baker allegedly owed them. After the Behrmanns rested their case at trial, the trial court granted a nonsuit. Because the nonsuit was properly granted, we affirm.

*FACTS AND PROCEDURAL HISTORY*

A. *Facts*

Because we are reviewing the trial court's grant of a nonsuit, we construe the evidence presented at trial in the light most favorable to the Behrmanns, and resolve all presumptions, inferences and doubts in their favor.

(*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214-1215; *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 (*Nally*).)

In the mid-1990s, Baker created a proprietary investment "tool" he called the "Financial Independence Plan" (FIP). Under the FIP, an investor would buy a variable life insurance policy and place title to the policy in an irrevocable life insurance trust. The policy would be a "split dollar policy." Ten percent of the policy's premiums would be paid directly by the investor; the remaining 90 percent would be paid by a private charity the investor created and funded specifically for that purpose. The policy's death benefit was also split, with the charity and the investor's designated beneficiaries receiving a share upon the investor's death. Baker's plan advised investors up front that the Internal Revenue Service (IRS) might, at some point, disallow split dollar policies. Baker's plan also suggested that Hartford Life provide the life insurance policy; that the investor's private charity be housed at the National Heritage Foundation (NHF); and that attorney Michael Goldstein (Goldstein) be hired to draft the required legal documents.

The Behrmanns met with their insurance agent around this time. The agent had heard Baker discussing the FIP at a conference, and brought in a second agent more familiar with the FIP to help him advise the Behrmanns. The Behrmanns met only with the insurance agents; they never met Baker, and only spoke with him over the phone once years later. Baker provided the agents information about the FIP, and answered the agents' questions.

After conducting "due diligence" on the FIP with their personal attorney, the Behrmanns decided to use the FIP notwithstanding the possibility that split dollar policies might be disallowed. The Behrmanns then took out three insurance policies with Hartford Life (one for themselves and one for each of their two adult children); created the Highbourne Foundation as a private charity housed at NHF; and retained Goldstein to create the necessary legal documents. As the FIP promised, the Behrmanns avoided capital gains taxes, and were able to declare as charitable deductions the hundreds of thousands of dollars in stock they donated to

2

the Highbourne Foundation to pay the life insurance premiums. Baker received 15 percent of the commissions on the life insurance policy (the two agents split the other 85 percent); Baker was also listed as the Philanthropic Development Officer (PDO) for the Highbourne Foundation, which according to NHF's manual obligated him to answer questions and provide requested help regarding the foundation.

In 1999, Congress outlawed split dollar policies. The Behrmanns sought advice on what to do with their FIP-related policies from several advisors, including Baker. The Behrmanns did not follow Baker's advice. Instead, they repaid the Highbourne Foundation for the premiums they had funneled through it, and then terminated and "cashed out" all three insurance policies. The Behrmanns left the proceeds of these cash-outs in the Highbourne Foundation's account, had their son manage the money in that account, and donated some of that money to charity.

By 2009, the Behrmanns still had $643,000 in the Highbourne Foundation account. NHF declared bankruptcy, and the bankruptcy court determined that the Behrmanns had donated this money to the Highbourne Foundation (and hence NHF), so those funds could be used to satisfy NHF's debts.

B. *Procedural History*

The Behrmanns sued Baker and his affiliated companies for violating the Consumer Legal Remedies Act (CLRA), Civil Code section 1750 et seq.,[1] for breach of fiduciary duty, for negligence, and for negligent misrepresentation.[2] Although they ultimately recovered $590,000 of the $643,000, the Behrmanns sued Baker for the full account balance, for lost earnings on that amount, and for over $450,000 in attorney's fees and costs incurred litigating the bankruptcy.

---

[1] Unless otherwise indicated, all statutory references are to the Civil Code.

[2] The Behrmanns also alleged civil conspiracy and breach of contract, but they do not challenge on appeal the trial court's rulings on these claims.

The case proceeded to trial. After the close of the Behrmanns' case, Baker moved for a nonsuit. The trial court granted the motion. The court reasoned that Baker had not violated the CLRA because the FIP gave the Behrmanns all of the benefits Baker promised. The court found that the Behrmanns were, at bottom, seeking to hold Baker responsible for not anticipating that NHF would declare bankruptcy 13 years after the Behrmanns adopted the FIP. The court further determined that Baker did not owe the Behrmanns a fiduciary duty because he "basically sold his product" to the insurance agents, "who sold it to" the Behrmanns. Alternatively, the court ruled that Baker had not breached any duty.

## DISCUSSION

The Behrmanns assail the trial court's grant of a nonsuit. We independently review the trial court's determination that the evidence presented by the Behrmanns at trial was insufficient, as a matter of law, to permit a jury to find in their favor. (*Nally*, *supra*, 47 Cal.3d at p. 291.)

### I. *The Consumer Legal Remedies Act Claim*

The CLRA empowers consumers to sue a defendant for enumerated "unfair or deceptive acts or practices" during "transaction[s] intended to result or which result[] in the sale or lease of goods or services . . . ." (§ 1770, subd. (a).) The Behrmanns argue that the jury should have considered this claim. Baker responds that the trial court properly rejected this claim as a matter of law because (1) he never sold a "good" or provided a "service" within the meaning of the CLRA; and (2) the Behrmanns did not prove the causal link between his conduct and their losses. We need not decide the first issue because the nonsuit was proper on the causation element alone.

In addition to proving that the defendant engaged in proscribed acts or practices in relation to a "good[]" or "service[]," a plaintiff must establish that the defendant's acts or practices damaged her. (E.g., *Bower v. AT & T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1556.) Causation is a question of fact "[e]xcept in the rare case[s] where the undisputed facts leave no room for a reasonable

4

difference of opinion . . . ."  (*Blankenheim v. E.F. Hutton & Co.* (1990) 217 Cal.App.3d 1464, 1475 (*Blankenheim*).)  This is one of those rare cases.

The damages the Behrmanns seek all arise from the loss of the funds sitting in the Highbourne Foundation account at NHF in 2009.  Those damages were not proximately caused by anything Baker did.  Baker was undoubtedly the "architect" of the FIP, but the FIP advised that the NHF account was to be used as a conduit for paying insurance policy premiums.  More to the point, the FIP performed as promised:  The Behrmanns were able to take full advantage of all promised tax breaks and were never audited, even after Congress disallowed split dollar policies.

The losses the Behrmanns incurred in 2009 stemmed from the cumulative effect of Congress' disallowance of split dollar policies; of the Behrmanns' decision—upon the advice of others—to ignore Baker's advice and instead cash out the life insurance policies and leave the proceeds in the Highbourne Foundation account; and of NHF's subsequent bankruptcy.  To be sure, the Behrmanns would not have created an account at NHF absent the FIP.  But the Behrmanns' decision to use that account in a manner not recommended by Baker and not contemplated by the FIP was theirs and theirs alone.  (See *Wilhelm v. Pray* (1986) 186 Cal.App.3d 1324, 1333 [reliance on advice of others is a superseding cause that severs causation]; *Goehring v. Chapman Univ.* (2004) 121 Cal.App.4th 353, 365-366 [damages arising from independent causes sever chain of causation].)  Under these facts, the loss of the money in that account cannot be attributed to Baker, and the Behrmanns' CLRA claim was properly dismissed.

## II.  *Fiduciary Duty Claim*

A fiduciary duty arises when one party is """. . . duty bound to act with the utmost good faith for the benefit of the other party. . . .""  (*Wolf v. Super. Ct.* (2003) 107 Cal.App.4th 25, 29, quoting *Herbert v. Lankershim* (1937) 9 Cal.2d 409, 483.)  The Behrmanns argue that Baker owed them a fiduciary duty by virtue of (1) his role as their investment advisor; (2) his role as the PDO to the Highbourne

5

Foundation account; and (3) the statutory duty under Business and Professions Code section 17510.8. The existence of a fiduciary duty is a question of law we review de novo. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1599.) We reject each of the Behrmanns' proffered rationales.

First, the evidence establishes as a matter of law that Baker did not owe the Behrmanns any fiduciary duties as their investment advisor. Investment advisors owe fiduciary duties to their clients. (See *Twomey v. Mitchum Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 709 [investment counselor and stock broker owes client fiduciary duty]; *Blankenheim*, *supra*, 217 Cal.App.3d at p. 1475 [same, as to stock broker].) But Baker was not the Behrmanns' investment advisor. He was never retained for that purpose; he made no contracts with them; and he never met them. What Baker did was invent the FIP. Yet it was the Behrmanns' insurance agents who presented the FIP and the Behrmanns' own lawyer and other advisors who encouraged them to adopt it.

Second, the evidence establishes as a matter of law that the role of a PDO is not fiduciary in nature. The NHF's manual defines the PDO as the person to whom questions can be directed. Consistent with this purpose, the Behrmanns called Baker with questions, but when it came to renegotiating NHF fees, they called their insurance agent—not Baker. The Behrmanns point out that they *thought* they were Baker's clients, and that NHF's founder thought of them as Baker's "clients." However, subjective belief is not enough to create a fiduciary relationship. (*Zenith Ins. Co. v. O'Connor* (2007) 148 Cal.App.4th 998, 1010.) The Behrmanns also point to their expert's opinion that Baker's status as their PDO rendered him a "watchdog" owing them a fiduciary duty. The trial court rejected that opinion as grounded in unsupported reasoning and hence not entitled to any weight. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771-772.) The court did not abuse its discretion in rejecting the expert's opinion while resolving the nonsuit motion. (*City of San Diego v. Sobke* (1998) 65 Cal.App.4th 379, 396 [trial court's gatekeeping rulings evaluated for

6

abuse of discretion]; *People ex rel. Dept. of Transportation v. Dry Canyon Enterprises, LLC* (2012) 211 Cal.App.4th 486, 493 [trial court should not consider rejected expert testimony in evaluating nonsuit motion].)

Lastly, Business and Professions Code section 17510.8 does not apply here. That section creates a fiduciary duty between those who solicit on behalf of a charity, and the persons donating to the charity. (*Ibid.*) However, the Behrmanns were donating their own money to their own private charity at NHF, and then distributing that money to other charities. Baker was not involved in these transactions. Baker initially suggested that the Behrmanns use NHF to house their private charity, but this does not constitute a "solicitation" of funds *for NHF* because the Behrmanns retained control over their donations and further directed them as they saw fit.

### III. *Remaining Claims*

The Behrmanns' negligent performance of financial services and negligent misrepresentation claims were properly dismissed for the same reasons as their claim under the CLRA: Baker did not proximately cause the Behrmanns' damages. (E.g., *Conroy v. Regents of Univ. of Calif.* (2009) 45 Cal.4th 1244, 1256 [causation is element of negligent misrepresentation claim].)

### IV. *Evidentiary Errors*

The Behrmanns contend that the trial court erred in excluding evidence that (1) Goldstein (the attorney Baker recommended) sought to obtain a conflict of interest waiver from an unrelated client in 1998; and (2) NHF later amended its application form for private charities to spell out that donors would lose "control" of their donations as well as "ownership" and "custody." Because these two exhibits do not affect our analysis, their exclusion is harmless.[3] (Cf.

---

[3] For the same reasons, the Behrmanns' post-briefing motion to strike portions of Baker's brief and their request for judicial notice are denied as moot.

7

*Hirano v. Hirano* (2007) 158 Cal.App.4th 1, 8 [reversal mandated if wrongly excluded evidence "could have enabled appellant to overcome the nonsuit"].)

*DISPOSITION*

The judgment is affirmed. Costs on appeal are awarded to Baker.

<u>NOT TO BE PUBLISHED.</u>

HOFFSTADT, J.[*]

We concur:

GILBERT, P. J.

YEGAN, J.

---

[*](Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

8

Denise de Bellefeuille, Judge

Superior Court County of Santa Barbara

_____

Nye, Peabody, Stirling, Hale & Miller, LLP, Karen K. Peabody, Schendzielos & Associates, LLC, Daniel J. Schendzielos (*pro hac vice*) for Plaintiffs and Appellants.

Gordon & Rees LLP, Theresa A. Kristovich and David L. Jones for Defendants and Respondents.