Filed 12/29/20  P. v. Becker CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D075885 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN359237) |
| DUSTIN WADE BECKER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Bradley A. Weinreb, Judge.  Affirmed.

Kelly E. DuFord, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Dustin Wade Becker appeals from a judgment sentencing him to prison after the court revoked his probation based on violations of his probation conditions.  He contends that the trial court abused its discretion

by relying on inadmissible hearsay, and that without that evidence there was insufficient evidence to support the court's findings.

We affirm the judgment. Substantial admissible evidence supported the court's findings, and the court did not abuse its discretion.

BACKGROUND

*Procedure*

Defendant entered into a plea bargain in which he pleaded guilty to assault with force likely to cause great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)), with personal infliction of great bodily injury (§ 12022.7, subd. (a)), which was a serious felony (§ 1192.7, subd. (c)(8)); evading an officer, with reckless driving (Veh. Code, § 2800.2); and with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)), with a blood alcohol concentration of more than .15 percent (Veh. Code, § 23578). Other charges were dismissed. In accordance with the agreement, on November 21, 2017, the court imposed a sentence of eight years eight months, consisting of the upper term of four years for assault, three years for infliction of great bodily injury, one-third the middle term for evading an officer with reckless driving, and one year on the misdemeanor driving under the influence. The court suspended execution of the sentence, and placed defendant on formal probation for three years on the felonies and on informal probation for five years on the misdemeanor of driving while under the influence.

Defendant initially violated his probation on February 1, 2018. After his probation officer told him not to possess or use alcohol, and not to drive, defendant went to his car and turned on the ignition. A beer can was in the

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

car.  Defendant admitted the violation.  The court revoked and reinstated probation on the same terms and conditions.

On July 3, 2018, the probation department alleged that defendant had violated several conditions of probation.  After a contested hearing, the trial court found that defendant had willfully violated the terms of his probation, and revoked and terminated probation.  The court executed the previously imposed and suspended sentence of eight years eight months.  Defendant timely appealed.

*Underlying Crimes*[2]

Defendant got into an argument with Trevor E. while drinking at a bar on January 13, 2016.  Defendant challenged Trevor to go outside to fight.  Surveillance video shows that several of defendant's friends joined the fight.  Trevor was hit in the head, causing him to fall to the ground and lose consciousness.  Defendant and his friends punched Trevor heavily in the face, head, stomach and chest more than 25 times while he lay on the ground.  One of the assailants kicked Trevor in the head repeatedly, and another straddled Trevor, punched him and struck him with his knee.  Defendant kicked him in the ribs and knocked him back to the ground after he was up.  One of the assailants hit Trevor on his leg with a metal baseball bat.  Trevor suffered three facial fractures, including a broken nose.  His left eye was nearly swollen shut.  He had numerous cuts and bruises on his head, face, body and legs.  Trevor was traumatized by the beating and suffered continuing anxiety as a result of the beating.

On May 7, 2016, a deputy saw defendant speeding southbound on East Vista Way about 75 miles per hour.  Defendant turned onto a smaller road, with a speed limit of 25 miles per hour.  Defendant drove at a rate of more

---

[2]    The statement of facts is taken from the probation report.

than 40 miles per hour. The deputy followed defendant with his emergency lights and siren on. Defendant continued speeding on residential streets, at more than 20 miles per hour faster than the posted speed, weaving across the middle lines, and failing to stop at several stop signs, nearly causing a collision with a motorcycle. He finally stopped in a residential driveway. Sheriffs removed defendant and his passenger from the car at gun point, handcuffed and arrested defendant. Defendant appeared to be intoxicated, with red watery eyes and the smell of alcohol on his breath. He stated he had drunk four or five beers. He said he was grieving the death of his mother and started sobbing. His blood alcohol concentration was measured at .16 percent, and he had cannabinoids in his blood as well.

*Probation Violation Hearing, July 9, 2018*

Probation officer Michelle T. testified that she explained all his probation conditions to defendant at their first meeting. She instructed him not to use or possess alcohol and not to drive, in addition to the other conditions. Defendant said he understood the requirements of his probation. He never missed a probation appointment.

Defendant was arrested on probation violations after a probation search of his apartment on June 29, 2019. The probation department alleged that defendant failed to comply with condition 2(t), payment of $207.01 in victim restitution; condition 6(a), obey all laws; condition 8(b), not use or possess alcohol; condition 8(j), requiring participation in, compliance with, and payment of all the costs of a continuous alcohol monitoring program; condition 9(c), not use or possess any controlled substance; and condition 12(f), not possess or own any weapon or firearm.

4

*Condition 2(t) - Failure to Pay Victim Restitution*

Defendant was required to pay $207.01 in victim restitution (§ 1202.4, subd. (f)) to the Victim Compensation Board. The probation officer testified that defendant made only two payments, totaling $35, to the Department of Revenue Recovery. Defendant made those payments soon after his sentencing, then made no more.

The court did not mention this failure to pay in its ruling on defendant's violations. Victim restitution payments are enforceable as if they were civil orders. (§ 1202.4, subd. (i).) We do not discuss this condition further.

*Condition 8(b) - Not Use or Possess Alcohol*

Condition 8(b) of the probation order was not to use or possess alcohol if so directed by his probation officer. Probation officer Michelle directed defendant not to use or possess alcohol. Defendant said he understood the requirements.

Sheriff's Deputy Daniel Hackstedde testified at the hearing that on March 25, 2018, he and several other deputies responded to a report of a battery at a residence in Vista. It took about 30 minutes for the deputies to gain access to the home after first arriving. Hackstedde spoke to defendant and the others present at the apartment. All seemed to be under the influence of alcohol, based on their demeanors and the nature of the call. Defendant visibly appeared to be under the influence of alcohol, and the officer smelled alcohol on his breath. The officer's assessment that defendant was under the influence of alcohol was based on defendant's appearance and smell, and on the officer's training and experience. Hackstedde spoke with defendant for a minute or less, and did not conduct a field sobriety test or any other test of intoxication of defendant.

5

*Condition 8(j) - Participation in and Compliance with a Secure Continuous Alcohol Monitoring Program (SCRAM)*

Condition 8(j) required defendant to participate in, comply with, and bear all costs of a continuous alcohol monitoring program if directed by his probation officer. After Hackstedde found defendant under the influence of alcohol on March 25, Michelle told defendant to enroll in and comply with the SCRAM program. Michelle verified with SCRAM that defendant had made only one phone call to the organization. He never enrolled.

Tawny B., the court liaison for SCRAM, testified. She oversaw the SCRAM program for people on formal probation. She received a referral for defendant from a probation officer, but defendant never enrolled. Tawny instructed her administrative assistant to call defendant. Tawny reviewed the e-mail communications she had with her administrative assistant on April 17 and April 18. According to the e-mails, defendant spoke with the administrative assistant once by phone. Defendant said that he could not afford the program and would speak with his probation officer. Tawny testified that defendant did not call SCRAM again and he never made an appointment to come into the office.

Tawny explained the practice at SCRAM. If someone claims a financial hardship, he or she can fill out a form at the SCRAM office stating financial hardship. SCRAM offers reduced fees on a sliding scale for those who provide documentation of a hardship. The probationers are told they must come into the SCRAM office to enroll and to fill out the financial hardship form. The practice at SCRAM is not to tell probationers to talk with their probation officer if they cannot afford the fees. The practice is to tell the probationers that reduction of fees is available, but the probationer must make an

appointment and come into the office to enroll and request reduction of fees. Defendant never set up an appointment.

Defendant went to Michelle, his probation officer, and showed her documentation that he could barely afford food and rent. He said he could not afford the SCRAM program. Michelle told defendant that SCRAM offered financial assistance and that he needed to contact SCRAM to discuss a payment plan. She gave him an additional month to comply with the requirement but defendant never contacted SCRAM again. Michelle called Tawny on May 4, 2018, to ask if defendant had made any further contact with SCRAM. Tawny told her that defendant had no contact with SCRAM other than the single phone call he made.

*Condition 6(a) - Obey All Laws; Condition 9(c) - Not Use or Possess Any Controlled Substance; and Condition 12(f) - Not Possess or Own Any Weapon, Firearm, or Replica*

Deputy Scott Rossall testified that he supervised a search of defendant's residence on June 29, 2018. There were a total of five people in the house. He did not search defendant's room personally, but delegated that task to other deputies. The deputies told Rossall that they found a small bindle of heroin in the closet in defendant's bedroom and a replica handgun.[3] The replica handgun was not booked into evidence and was not photographed. There were stacks of money in a drawer in the bathroom. Real currency was interspersed with currency marked "for motion picture use only."

Rossall went to look at the bindle in the location where it was discovered. It was on the right side of the closet, in a container under a stack

---

[3] Statements of what the other deputies reported to Rossall were admitted over defendant's hearsay objection as nonhearsay for the effect of the statements on Rossall and his subsequent investigation.

7

of T-shirts that, to Rossall's recollection, appeared to be male clothing. Rossall questioned defendant about the closet. Defendant said he and his girlfriend had "communal property" in the closet. Defendant kept his property on the right side and on the back wall of the closet. Defendant said he had no knowledge of the heroin in the closet and it was not his.

The parties stipulated that the bindle found in defendant's room contained .54 grams of heroin, a usable amount. Defendant did not test positive for opiates or their derivatives. Michelle testified that defendant never tested positive for opiates and never appeared to be under the influence of opiates.

It was further stipulated that two character witnesses would testify that they had each known defendant for three to five years. They never saw defendant use heroin and knew that he disliked it because of his brother's drug use.

## DISCUSSION

Defendant contends that hearsay evidence was improperly admitted at his probation revocation hearing to prove the truth of his violations, and that without the hearsay, there was no substantial evidence to support the trial court's decision to revoke probation. We disagree. Substantial admissible evidence supports the court's decision. The court did not abuse its discretion in deciding to revoke and terminate probation, and to execute the sentence that was previously imposed and stayed.

*Legal Principles*

The goals of probation are to protect the public, ensure justice, restore losses to the victim, and rehabilitate the defendant. (§ 1202.7.) A court may revoke a defendant's probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation

8

officer . . . or otherwise that the person has violated any of the conditions of their [probation] . . . ." (§ 1203.2, subd. (a).)  A violation of probation must be willful, in the sense that the defendant must have known what he was doing. (*People v. Hall* (2017) 2 Cal.5th 494, 501.)

We review the trial court's factual findings supporting revocation of probation for substantial evidence, and we review the trial court's decision to revoke probation for abuse of discretion.  (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318; *People v. Rodriguez* (1990) 51 Cal.3d 437, 443 (*Rodriguez*).)  Proof of a violation of probation is sufficient if it is demonstrated by a preponderance of the evidence.  (*Rodriguez*, at p. 446.)

Because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole[4] restrictions," "thus the full panoply of rights due a [criminal] defendant . . . does not apply." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480 (*Morrissey*); see also *People v. Arreola* (1994) 7 Cal.4th 1144, 1152–1153 (*Arreola*).)  The minimal due process requirements at a probation revocation hearing include written notice of the claimed violations, disclosure of evidence against the defendant, an opportunity for the defendant to be heard and to present evidence, and "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." (*Morrissey*, at p. 489; *Arreola*, at pp. 1152–1153.)

The right to confrontation in a probation revocation hearing arises from the due process clause, not from the Sixth Amendment.  (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411; *People v. Abrams* (2007) 158 Cal.App.4th

---

4      "Parole and probation revocation hearings are equivalent in terms of the requirements of due process." (*Rodriguez, supra,* 51 Cal.3d at p. 441.)

9

396, 400, fn. omitted (*Abrams*).)  It is not absolute.  "Hearsay that bears a substantial guarantee of trustworthiness is admissible in probation revocation  proceedings.  [Citation.]  'In general, the court will find hearsay evidence trustworthy when there are sufficient "indicia of reliability." ' [Citation.] . . . [¶]  The determination whether hearsay evidence is trustworthy rests with the trial court and will not be disturbed on appeal absent an abuse of discretion." (*People v. Buell* (2017) 16 Cal.App.5th 682, 689.)

Hearsay should be excluded from a probation revocation hearing when the "need for confrontation is particularly important . . . because of the opportunity for observation of the witness's demeanor." (*Arreola*, *supra*, 7 Cal.4th at p. 1157.)  Hearsay evidence that is properly viewed as a substitute for live testimony, such as statements by victims or witnesses, should generally be excluded.  (*Abrams*, *supra*, 158 Cal.App.4th at p. 405; see *Arreola*, *supra*, 7 Cal.4th at p. 1157.)  For example, confrontation is helpful to probe a witness's testimony that a person appears to be intoxicated.  (*People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1201.)  In *Shepherd*, the trial court found a defendant had violated his probation condition by consuming alcohol. The only basis for the finding was testimony from a probation officer that a program administrator had told the probation officer that the defendant was dismissed from the program after smelling of, and testing positive for, alcohol.  (*Id*. at p. 1198.)  The appellate court found that hearsay was insufficiently reliable to be admissible to prove the truth of the fact that the defendant had been consuming alcohol.  (*Id*. at p 1202.)  Full confrontation and observation of the administrator's demeanor was particularly important to assess the veracity of the out-of-court statement.  (*Id*. at p. 1201.)  Here, for example, defense counsel elicited from the witness that he had talked with

defendant for a minute or less and conducted no tests of intoxication.

On the other hand, hearsay is admissible when confrontation will not materially aid the decisionmaker. For example, confrontation does not materially further the reliability of records that show "routine matters such as the making and keeping of probation appointments, restitution and other payments, and similar records of events." (*Abrams, supra*, 158 Cal.App.4th at p. 405; *Arreola, supra*, 7 Cal.4th at p. 1157.) A probation officer is not likely to have personal recollection of these matters and would have to consult records, especially to prove a negative such as the failure of a probationer to report. (*People v. Gomez* (2010) 181 Cal.App.4th 1028, 1038 (*Gomez*).) Cross-examination and demeanor of the witness are not significant factors in evaluating the credibility of an officer's foundational testimony about the contents of the probation department's records. Such records bear indicia of reliability and are admissible. (*Ibid.*; *Arreola*, at p. 1157; *Abrams*, at p. 405.)

We review the evidence supporting the violation findings with these precepts in mind.

*Analysis*

*Use of Alcohol - Condition 8(b)*

Defendant contends the evidence of his intoxication on March 25, 2018, was too insubstantial to support the violation, because Hackstedde spent less than one minute evaluating defendant. Hackstedde provided direct evidence of defendant's intoxication based on his personal observations, training and experience. The weight and credibility of the evidence is a matter for the trial court to decide. The court needed to find the violation only by a preponderance of the evidence. (*Rodriguez, supra*, 51 Cal.3d at p. 446.) The

court did not abuse its discretion in accepting the opinion of an experienced officer. (*Id*. at p. 443.)

*Failure to Participate in SCRAM—Condition 8(j)*

Defendant alleges that his failure to participate in SCRAM was based on improper hearsay because the administrative assistant who personally spoke with defendant did not testify. Defendant never objected to Tawny's testimony. He has forfeited this objection on appeal. (*People v. Nolan* (2002) 95 Cal.App.4th 1210, 1216.)

In any event, the evidence of this violation was admissible. The SCRAM violation consisted of defendant's failure to make an appointment to initiate treatment. The only relevant evidence was that defendant never made an appointment to go to SCRAM. The negative evidence that defendant failed to make an appointment could be determined only from the records of SCRAM, which are admissible hearsay. (*Gomez*, *supra*, 181 Cal.App.4th at pp. 1038–1039 [testimony based on electronic records was admissible to show that probationer did not report to probation, did not pay restitution, and did not submit verification of employment or counseling attendance]; *Abrams*, *supra*, 158 Cal.App.4th at p. 405 [probation department computer records admissible]; see *Arreola*, *supra*, 7 Cal.4th at p. 1157 [hearsay evidence admissible to prove routine matters such as making and keeping of probation appointments].) Neither the demeanor nor cross-examination of the administrative assistant would be helpful in eliciting more information about defendant's failure to appear at SCRAM. (*Gomez*, at pp. 1038–1039; see also *Abrams*, at pp. 404–405.)

We need not decide if the administrative assistant's statements were admissible, in any event, because Michelle provided information by direct testimony. Michelle testified that she told defendant that SCRAM could

12

provide financial relief but that he had to go into the SCRAM office to apply for financial relief. Tawny's testimony that defendant never made an appointment with SCRAM was based on SCRAM's records and admissible. (*Arreola, supra,* 7 Cal.4th at p. 1157; *Abrams, supra,* 158 Cal.App.4th at p. 405; and *Gomez, supra,* 181 Cal.App.4th at pp. 1038–1039.) Substantial admissible evidence showed that defendant was told he could apply for financial aid if he went into the SCRAM office, and that he never made the appointment to do so.

Defendant contends that hearsay evidence of lack of attendance was not "routine" because of the "role it can play for potential applicants" and because it was a requirement for defendant's probation. The issue is not whether the program is routine but whether making and keeping appointments is routine. (*Arreola, supra,* 7 Cal.4th at p. 1157.) Making and keeping appointments with any treatment program is routine regardless of the nature of the treatment.

Defendant further contends there was insufficient evidence that his failure to comply with this condition was willful, because he lacked the money to pay for it. Defendant's violation was willful because he knew what steps he had to take for financial relief. Michelle told defendant that SCRAM could reduce his fees and that he had to go to SCRAM to work out a payment plan. She gave him an additional month to work out his payments with SCRAM and enroll. He failed to do so. The court stated that the willful violation of the SCRAM compliance condition was not related to defendant's inability to pay. The court would have determined that defendant substantially complied with the condition if he had made the appointment with SCRAM to follow up on the program. Defendant willfully violated condition 8(j) because he never made an appointment with SCRAM.

13

*Obey All Laws; Not Possess Any Controlled Substance; and Not Possess Any Firearm, or Replica—Conditions 6(a), 9(c) and 12(f)*

Defendant agreed as conditions of probation to obey all laws, to not use or possess any controlled substance, and to not possess or own any weapon, firearm or replica. Violations of these conditions were discovered when deputies conducted a probation search of defendant's residence on June 29, 2018. Rossall supervised but did not conduct the search. Defendant objected to Rossall testifying about what other deputies reported to him. The court admitted statements from the other deputies to Rossall as nonhearsay, i.e. not for the truth of the matters asserted but for the effect on Rossall and his subsequent investigation. We review the statements with that limitation.

Based on what the deputies told him, Rossall looked in the closet in defendant's room and saw the bindle in a container underneath a stack of T-shirts on the right side of the closet. Defendant told Rossall that he kept his clothes on the back and right sides of the closet. The T-shirts appeared to be male clothing. Rossall's direct eyewitness testimony, defendant's statements to Rossall, and the stipulation that the bindle contained a usable amount of heroin, were sufficient to support the court's finding by a preponderance of evidence that defendant possessed the heroin.

Excluding the statements that other deputies made to Rossall, substantial evidence supports the court's finding that defendant possessed a controlled substance and failed to obey all laws. We decline to decide the admissibility of the statements by other deputies to Rossall about the replica firearm, because there was more than sufficient cause to terminate defendant's probation even without evidence of possession of a replica firearm.

Defendant's underlying crime, initiating a vicious group beating of Trevor that broke three bones in Trevor's face, was a serious felony—a first

14

strike conviction. Defendant had an extensive criminal history that included prior batteries. He had not previously been to prison but his prior performance on probation was abysmal. Many of his crimes involved alcohol consumption, including the underlying assault and reckless evasion of police. The initial sentencing court described the plea bargain: defendant had said that he had turned a corner, gotten his life in order, would work on his problems and remain law-abiding. He was willing to have the maximum sentence of eight years eight months hanging over his head for three years for another chance at probation. Defendant knew the serious consequences of violating probation.

The probation officer had given defendant several chances. She did not seek revocation for his first violation of driving and possessing alcohol in February or for his intoxication in March. Instead, she directed defendant to sign up for SCRAM. Defendant did not make a sincere or substantial effort to comply with the condition. He was later found in possession of heroin. The court did not abuse its discretion in revoking and terminating defendant's probation, denying reinstatement, and executing the agreed upon sentence. (*Rodriguez*, *supra*, 51 Cal.3d at p. 443.)

## DISPOSITION

The judgment is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

16