[No. B091949. Second Dist., Div. Six. May 2, 1996.]

GARLYN A. BASHAM et al., Plaintiffs and Appellants, v.
JUDITH BABCOCK et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

COUNSEL

Steven R. Andrade and Duane P. Livingston for Plaintiffs and Appellants.

McCarthy & Associates and Jaye Heybl for Defendants and Respondents.

OPINION

GILBERT, J.—Here we hold that a party who has designated an expert to testify on a particular subject may not replace that expert with one stated on a supplemental list.

Plaintiffs appeal from a defense verdict in their personal injury trial. The trial court allowed an expert designated by defendant on a supplemental list to testify in place of the originally designated expert and on the same subject

matter. Plaintiffs contend this is error under Code of Civil Procedure section 2034. We agree and reverse.[1] [[/]]*

## FACTS

Garlyn A. Basham filed a complaint against Judith Babcock for damages arising out of an automobile accident. Babcock's automobile struck the driver's side door of Basham's automobile. At the time Basham's car was parked in a shopping center lot and Basham was in the car. He claimed he felt a sharp jolt that caused back injuries. Babcock claimed she was only going one or two miles per hour when she hit Basham's car. The defense theory was that back problems suffered by Basham were caused by a preexisting condition.

On November 28, 1994, the parties exchanged designation of experts. Basham designated his treating physicians Doctors Alex Gazaui and Robert Klein. He stated the experts were expected to testify as to the cause, nature and extent of his injuries, the cost of future medical care, and all related medical issues.

Babcock designated Doctor John Broms, an orthopedist, who had previously examined Basham for the defense. Babcock's attorney declared: "I am informed and believe that Doctor Broms will generally testify regarding the nature and extent of the injuries suffered by plaintiff, any pre-existing condition plaintiff may have suffered from, and the appropriateness of the medical treatment plaintiff received."

On December 2, 1994, Babcock served a supplemental designation naming Doctor Lawrence Harter, a radiologist. Babcock's attorney declared: "I am informed and believe that Doctor Harter will testify as to the physical condition of the plaintiff both before and after this incident. He will also testify as to causation of the plaintiff's physical condition."

Basham's attorney took Doctor Broms's deposition on December 22, 1994. Doctor Broms stated it was his opinion that Basham suffered a flare-up of preexisting degenerative disc disease, and that the accident caused the flare-up.

During the deposition the following colloquy took place between Basham's attorney and Doctor Broms:

"Q Okay. The MRI shows evidence of an annular tear. Can you tell us what an annular tear is?

---

[1]All statutory references are to the Code of Civil Procedure.
*See footnote, *ante*, page 1717.

"A The membrane that surrounds the disc is called an annulus, and it's a very thick membrane, and some radiologists feel that they can visualize a tear in this membrane. I am not good enough to be able to diagnose an annular tear. I don't know whether that's possible for me, period.

"Q Okay. Apparently you did see a report of the radiologist that performed the MRI, and they diagnosed an annular tear; is that correct?

"A Yes.

"Q Do you have any reason to doubt their diagnosis?

"A Yes.

"Q What is the reason to doubt their diagnosis?

"A Some radiologists don't feel that you can make that definitive a diagnosis."

Basham did not take Doctor Harter's deposition.

Trial began on January 18, 1995. The first two days were devoted to pretrial motions and jury selection. Basham did not then object to Doctor Harter. It was not until January 24, that Basham made a formal motion to exclude Doctor Harter's testimony. The motion was based on the theory that the supplemental designation of Doctor Harter was in violation of section 2034, subdivision (h). That subdivision allows the supplemental designation of an expert only if the expert will give an opinion on a subject to be covered by the adverse party's expert, and only "if the party supplementing the expert witness list has not previously retained an expert to testify on that subject."

Basham noted that the supplemental designation stated Harter would testify on the cause of Basham's injury. He pointed out that Doctor Broms testified in his deposition about the cause of the injury. Thus, Babcock had an expert to testify on that subject prior to designating Doctor Harter. Basham conceded Doctor Harter could testify concerning the ability to diagnose an annular tear from an MRI (magnetic resonance imaging) film. That was a subject about which Doctor Broms admitted he was not qualified. Basham expressed the fear, however, that the defendant was trying to substitute Doctor Harter for Doctor Broms as her designated expert.

In ruling on the motion the trial court stated that since it did not know what the testimony would be, the best it could say was that Doctor Harter could not testify to the same thing as Doctor Broms.

The trial proceeded. Doctor Gazaui testified on behalf of Basham. Gazaui said that after he physically examined Basham and reviewed X-rays and the MRI, he concluded that Basham had a bulging disc in 1989 and 1993. The 1993 MRI showed an annular tear. Had Basham had an annular tear in 1989 the MRI of 1993 would have shown significantly more disc degeneration. This is because when an annular tear occurs, disc degeneration takes place at an accelerated pace. It was Doctor Gazaui's opinion that Basham's pain was caused by an annular tear, and that the tear was caused by the 1993 accident.

On the fifth day of trial, Basham renewed his motion to exclude Doctor Harter's testimony. The court repeated its earlier ruling that Doctors Harter and Broms could not testify to the same thing, but refused to exclude or limit Doctor Harter's testimony. The following day Basham's counsel submitted a copy of a letter to the court which he claimed showed Doctor Broms was retained to testify about causation. The letter was from Babcock's counsel to Doctor Broms and requested Doctor Broms to examine Basham. It stated in part: "The position which we hope to be able to advance in this matter is that the plaintiff suffered only a minor flare-up of his symptoms as a result of this accident, and that the symptoms and problems he has complained of post-accident are those that he would have suffered from anyway. Of concern, of course, is the determination by Doctor Gazaui that the annular tear observed on the MRI is a consequence of the subject automobile accident."

The court dismissed the letter stating: "This is gamesmanship. I'm really, frankly, tired of it. I'll order that this be placed as part of the record."

After Basham rested, the defense called Doctor Harter as its first witness. Harter testified that the disc bulge shown on tests conducted in 1989 was caused by an annular tear, and that a disc does not bulge without such a tear. He stated that a CAT (computerized axial tomography) scan will not show an annular tear, but that the CAT scan conducted in 1989 and the MRI conducted in 1993 show an "identical spine." He said the studies are "essentially identical." Doctor Harter also testified Basham was suffering from facet joint syndrome, a well known cause of pain in the lumbar spine.

On cross-examination Basham's counsel asked whether an automobile accident could cause a bulging disc. Doctor Harter answered "I think you have to define . . . the parameters of a motor vehicle accident specifically." Counsel then asked Harter to assume the most violent automobile accident he could envision. Doctor Harter said the chances of a frank rupture of the disc are more likely than a bulging disc. Counsel asked if there is any trauma that could result in a bulging disc. Doctor Harter said there was.

On redirect Doctor Harter stated that a comparison of the 1989 studies with the 1993 studies shows no sign of trauma to the spine. He also testified

there was a "[v]ery low likelihood" that a one- or two-mile-per-hour automobile collision would result in an increase in an annular tear.

On recross examination Basham's counsel asked whether Doctor Harter was talking about any one- or two-mile-per-hour collision. Doctor Harter said studies have shown that with crashes of 10 miles per hour or less the only complaints people had were 24 to 48 hours of neck pain, never complaints of back pain.

At the conclusion of testimony on Thursday, January 26, trial recessed until the following Monday. On Friday afternoon Babcock's counsel told Basham's counsel that Doctor Broms would not be called. At approximately 4:45 that afternoon Basham attempted to serve a subpoena on Babcock's counsel directed to Doctor Broms. The subpoena ordered Broms to appear at trial at 9 a.m. Monday morning. A fee for Broms's appearance accompanied the subpoena. Basham also unsuccessfully attempted personal service on Broms on Saturday, Sunday and Monday.

On Monday morning the defense rested, having called Harter as its only witness. Basham called Broms as a rebuttal witness, but Broms did not appear. The court held a hearing outside the presence of the jury.

Babcock's counsel told the court he decided not to call Doctor Broms on Thursday evening. He released Doctor Broms, and Doctor Broms took a vacation.

[[/]]* Basham offered to read the relevant portions of Broms's deposition transcript to the jury.

The trial court ruled that [[/]]* the service of the subpoena directed to Doctor Broms was not timely. The trial court also ruled that because there was no valid service of a subpoena, Doctor Broms was not unavailable as a witness. Thus, Basham could not read Doctor Broms's deposition to the jury. The trial court allowed Basham, however, a one-day continuance to try to personally serve Broms.

Further attempts to serve Doctor Broms were unavailing. On Tuesday morning the trial court again refused to allow Basham to read Broms's deposition to the jury, ruling that attempts to subpoena him were not timely.

The jury returned a verdict for the defense, and Basham appeals the ensuing judgment.

*See footnote, *ante*, page 1717.

## Discussion

█ Basham contends the trial court's decision to allow Doctor Harter to testify violated section 2034.

Under section 2034 any party may demand that all parties simultaneously exchange information concerning each other's expert trial witness. (§ 2034, subd. (a).) The information must include the name and address of the expert, and "[a] brief narrative statement of the general substance of the testimony that the expert is expected to give." (§ 2034, subd. (f)(2)(B).) The trial court must exclude from evidence the expert opinion of any witness offered by any party who has unreasonably failed to list the witness as an expert. (§ 2034, subd. (j)(1).)

A party may submit a supplemental expert witness list within 20 days after the exchange, but only "if the party supplementing the expert witness list has not previously retained an expert to testify on that subject." (§ 2034, subd. (h).) It follows that a party who has designated an expert to testify on a particular subject may not use a supplemental list to substitute experts. Thus it is insufficient simply to rule, as the trial court did here, that the experts' testimony could not be redundant. Babcock's failure to call Doctor Broms did not open the door for Doctor Harter to testify on subjects for which Doctor Broms was retained as an expert witness.

In listing Doctor Broms as an expert witness, Babcock's attorney declared, "I am informed and believe that Doctor Broms will generally testify regarding the nature and extent of the injuries suffered by plaintiff, [and] any pre-existing condition plaintiff may have suffered from . . . ." That describes most of the testimony of Doctor Harter.

It is true that Doctor Broms expressed his inability to diagnose an annular tear from an MRI. But Doctor Harter's testimony went well beyond whether Basham's MRI showed an annular tear. He testified that Basham's preexisting condition had not changed, and attributed Basham's pain to facet joint syndrome. Babcock simply substituted Doctor Harter as her expert to testify on subject matters for which Doctor Broms had been previously retained. In doing so she violated the letter and spirit of section 2034.

Babcock argues that even if she violated section 2034, exclusion of Doctor Harter's testimony would not be an appropriate sanction. Babcock points out that section 2034, subdivision (j) permits exclusion for failure to

list an expert witness, but permits only lesser sanctions if the description of the expert's testimony required by subdivision (f)(2)(B) is defective. (Citing *Castaneda* v. *Bornstein* (1995) 36 Cal.App.4th 1818, 1827-1830 [43 Cal.Rptr.2d 10]; *Martinez* v. *City of Poway* (1993) 12 Cal.App.4th 425, 429 [15 Cal.Rptr.2d 644].)

But Basham is not complaining that the description of an expert's testimony was defective. He is complaining that Doctor Harter was not originally listed as an expert at all. Even assuming only a sanction less than exclusion was appropriate in this case, then at a minimum, Basham should have been allowed to read to the jury appropriate portions of Doctor Broms's deposition.

Nor was the error harmless. It is true that the jury apparently did not believe Basham's experts when they testified that the accident was the cause of his injury. But had Doctor Broms testified, his deposition shows he would have concurred that the accident caused some injury. That testimony coming from a defense expert would have boosted the plaintiff's experts' credibility. Even if Doctor Harter had been allowed to testify that the accident did not cause Basham any injury, his opinion would have stood alone as against experts retained by both plaintiff and defendant. It is reasonably probable Basham would have obtained a result more favorable than a defense verdict in the absence of the trial court's error. We must reverse. (*Thomas* v. *Lusk* (1994) 27 Cal.App.4th 1709, 1720 [34 Cal.Rptr.2d 265].)

Babcock argues that Basham's attorney elicited the testimony he claims is devastating to his case. Babcock refers to Doctor Harter's testimony on cross-examination that an accident such as the one experienced by Basham would not cause an annular tear. But that testimony did nothing more than support Doctor Harter's testimony on direct that Basham's condition had not changed after the accident and that his problem was caused by facet joint syndrome.

Had Doctor Harter's testimony been excluded or confined to discussing whether the MRI showed an annular tear, the testimony would not have been elicited on cross-examination. At the very least had Basham been able to read Doctor Broms's deposition to the jury, it is reasonably probable Doctor Harter's analysis that the accident caused no injury would have been called into question by Babcock's own witness. The harm done to Basham's case on cross-examination was the probable result of the trial court's error.

[[/]]*

The judgment is reversed for a new trial. Costs are awarded to appellants.

Stone (S. J.), P. J., and Yegan, J., concurred.

*See footnote, *ante*, page 1717.