Filed 8/7/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| VINCENT PINA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>Defendants and Respondents. | B285630 c/w B287285<br>(Los Angeles County<br>Super. Ct. No. BC526308) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Cunningham, Judge. Reversed and remanded with directions.

Medvei Law Group and Sebastian M. Medvei for Plaintiff and Appellant.

Collins Collins Muir + Stewart and James C. Jardin for Defendants and Respondents.

# INTRODUCTION

Appellant Vincent Pina brought this personal injury suit against respondents County of Los Angeles and Los Angeles County Sheriff's Department (collectively the County), alleging, inter alia, that the County negligently caused a bus on which he was a passenger to strike a pillar in 2013. Appellant denied injury immediately after the accident but reported pain soon thereafter, obtaining treatment and diagnoses of spinal injury from Gary Chen, M.D., and chiropractor Philemon Tam, D.C. At trial, appellant admitted sustaining injury in a separate bus accident in 2016, for which he sued the Los Angeles County Metropolitan Transportation Authority (MTA). The County also introduced evidence that appellant was struck by a car in 2010. Nevertheless, Dr. Chen opined that the 2013 accident caused the injuries for which appellant claimed damages, including injuries requiring future surgery. Pursuant to Code of Civil Procedure section 2034.310, subdivision (b), the trial court allowed the County to call Robert Wilson, M.D. -- whom the MTA had retained to examine appellant in his separate lawsuit, but whom the County failed to designate as an expert in this case -- for the purpose of impeaching Dr. Chen. Dr. Wilson testified that Dr. Chen was wrong about the cause of appellant's injuries and the need for surgery.

The jury found the County liable and awarded appellant $5,000 in damages. The trial court denied appellant's motion challenging the adequacy of the damages,

2

relying in part on its conclusion that the jury believed Dr. Wilson's opinion that appellant would not require future surgery. The court further denied appellant's post-trial motion for costs incurred in proving negligence and causation of injury and granted several post-trial motions filed by the County. The court awarded the County costs (including attorney's fees) under Code of Civil Procedure sections 998, 1021.7, and 1032 and entered a second judgment in the County's favor.

In his consolidated appeals from the judgment on the verdict and from the court's order on the parties' post-trial motions, appellant contends (1) the trial court prejudicially erred in admitting Dr. Wilson's testimony, which exceeded the scope of permissible impeachment by an undesignated expert witness; (2) the trial court prejudicially erred in admitting other evidence concerning the cause of appellant's injuries and the amount of medical expenses he incurred; (3) the County's counsel prejudicially misrepresented the law and the record during closing argument; (4) the jury's damages award was inadequate as a matter of law; (5) the trial court erred in awarding attorney's fees to the County under Code of Civil Procedure section 1021.7; and (6) the trial court erred in denying appellant's motion for costs of proof under Code of Civil Procedure section 2033.420.

We agree that the testimony of Dr. Wilson went beyond the scope of permissible impeachment by an undesignated expert, and that the effect of admitting his opinion testimony was prejudicial. We therefore reverse the judgment on the

3

verdict and remand for a new trial on all issues, with instructions to the trial court to vacate its order on the parties' post-trial motions and the judgment entered thereon. We address appellant's additional contentions only to the extent they regard issues likely to arise on retrial.

## PROCEEDINGS BELOW

### A. *Pretrial Proceedings*

In both an original and an amended complaint, appellant sued the County for negligence under Vehicle Code section 17001 and for failure to summon immediate medical care under Government Code section 845.6, alleging that in 2013, while he was incarcerated in a County jail, the County negligently injured him in a bus accident and failed to summon immediate medical care in response to his requests.[1]

---

[1] Government Code section 845.6 renders a public entity immune from liability for "injury proximately caused by the failure of [an] employee to furnish or obtain medical care for a prisoner in his custody . . . ." Notwithstanding this immunity, the statute imposes liability if the entity's employee, acting within the scope of employment, "knows or has reason to know that the prisoner is in need of immediate medical care and . . . fails to take reasonable action to summon such medical care." (*Ibid.*) The duty to summon immediate care is of a "limited nature," which "makes sense given that the statute carves that duty out of a broad, general immunity." (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1074.)

4

In early 2014, three years before trial, the County served responses to appellant's first set of requests for admission, asserting its inability to admit or deny that it breached a duty of care to appellant by causing the 2013 accident and denying that the accident caused appellant injury. At the time it served these responses, the County was in possession of a medical report prepared by Dr. Gary Chen, whom appellant had consulted in connection with his complaints of injury. A year later, in March 2015, in response to appellant's second set of requests for admission, the County admitted it was negligent when its employee caused the 2013 accident.

In August 2015, appellant served an expert witness list designating Dr. Chen and chiropractor Philemon Tam. Several days later, the County served an expert witness list and declaration identifying a single expert: Jacob Tauber, M.D. The declaration stated that the County expected Dr. Tauber to testify at trial regarding, inter alia, appellant's "future orthopedic medical treatment" and "the reasonableness and necessity of . . . future orthopedic medical care and related expenses." In April 2016, however, in opposition to several motions in limine filed by appellant, the County represented it did not intend to call any expert witness at trial.

In October 2016, the parties first appeared for trial before Judge Joseph R. Kalin. The court found the case not ready for trial because appellant had newly served the County with a second report by Dr. Chen -- prepared after

appellant was in a second bus accident earlier that year -- finding a disc herniation and recommending surgery. The court noted the County might be entitled to call an expert witness regarding Dr. Chen's new opinions. The parties stipulated to reopen discovery. The County then re-deposed appellant, who testified that although he hoped to avoid surgery by healing without it, he might need to obtain the surgery recommended by Dr. Chen.

The month before trial, the County served an offer to compromise under Code of Civil Procedure section 998, offering appellant a judgment in his favor for $5,000, "inclusive of costs and expenses, attorneys' fees and interest." Appellant did not accept the offer. In a settlement communication sent the same day, appellant's counsel estimated the value of the case as above $500,000, relying in part on the County's alleged exposure to damages resulting from Dr. Chen's recommendation for surgery.

The parties appeared for trial before Judge David S. Cunningham, III, in April 2017. At a hearing on the parties' motions in limine, appellant argued that the County should be barred from presenting expert opinion testimony from Dr. Robert Wilson, an orthopedic surgeon whom the MTA had retained to examine appellant in his separate lawsuit concerning the 2016 accident, but whom the County had not designated as an expert witness in this case. Asking the County to brief the issue, the court tentatively ruled that Dr. Wilson's testimony would be allowed only to impeach appellant's experts.

During the same hearing, the County's counsel acknowledged that the County's admission, in discovery, that it was "negligent" in causing the 2013 accident conceded the issue of breach of a duty of care. The next day, appellant voluntarily dismissed his cause of action for failure to summon immediate medical care.

**B. *Trial***

**1. *The 2013 Accident***

Appellant testified that in May 2013, he was arrested and incarcerated in County jail pending resolution of charges against him. On June 28, 2013, he was taken to and from court on a County bus. While pulling forward into a parking spot at what appellant estimated to be a speed of 5 to 10 miles per hour, the bus collided with a structural beam, causing the bus to sway. Due to the bus's swaying, the passenger to whom appellant was chained pulled appellant to the left, out of his seat, and onto the floor. Appellant testified inconsistently about the manner in which his body struck the interior of the bus.[2] Appellant confirmed that in a

---

[2] On cross-examination, appellant testified that his right shoulder hit the right side of the bus. Before the jury, the County's counsel read deposition testimony in which appellant claimed, in contrast, that his left shoulder was the only part of his body to strike anything inside the bus. Additionally, appellant confirmed that according to the transcript of a subsequent deposition in his separate lawsuit, he claimed to have hit his ribs during the accident. Appellant then testified that he believed his left shoulder hit the seat in front of him.

videotaped interview conducted immediately after the accident, he denied suffering any injury. The video was played for the jury.

The County called the bus's driver, Deputy Daniel Martin Del Campo, who testified that the bus scraped against a pillar as he was backing out of a parking space at a speed of one or two miles per hour. The County also called Sergeant Kevin Zaborniak, who testified that he and another officer interviewed the passengers within an hour of the accident and arranged for those who claimed injury to see medical staff.

## 2. *Appellant's Complaints in Custody*

Appellant testified he began to feel pain almost immediately after his videotaped interview, before he got back on the bus. He reported the pain to an unidentified female deputy, who told him to report it upon arrival back at jail. A nurse dispensed pills in the jail that evening, but appellant said nothing to her about pain. The next court day, appellant reported pain to his criminal defense attorney, who obtained a court order requiring the County to provide appellant a medical examination. When taken to nurse practitioner Nachet Harris several days later, appellant told her he was in pain and needed to see a doctor to determine if he needed an X-ray, but she told him no doctor was available.

The County called nurse practitioner Harris, who testified she was qualified to conduct physical examinations

8

and refer patients for X-rays, but appellant refused to be examined by her, claiming he needed to be examined by a physician. The County also called Dr. Nickolay Teophilov, a physician with supervisory responsibilities concerning medical care in County jails, who similarly testified that nurse practitioner Harris was qualified to perform a medical examination and order X-rays. Dr. Teophilov further testified that incarcerated persons could request medical care by submitting a written form or by approaching a "pill call" nurse. Appellant did neither.

### 3. *Appellant's Medical Treatment*

Appellant testified that within weeks of his release from the County's custody (upon acquittal in his criminal case), he saw Gary Chen, M.D., to whom his counsel referred him. Appellant claimed to have truthfully and completely disclosed his medical history to Dr. Chen. He completed about 20 sessions of physical therapy on Dr. Chen's recommendation, discontinuing the physical therapy in part because his pain decreased. Although Dr. Chen recommended that appellant obtain an MRI, he did not then obtain one.

The next year, in response to an alleged increase in pain, appellant began treatment with chiropractor Philemon Tam. Appellant claimed to have truthfully and completely disclosed his medical history to Tam. He completed about 20 sessions of chiropractic treatment with Tam, again discontinuing treatment in part because his pain decreased.

Appellant testified that his pain increased after he was involved in another bus accident in 2016. He confirmed that he was injured in the 2016 accident. After the accident, he saw Dr. Chen again and obtained an MRI for the first time. He expressed his intent to "at some point" follow Dr. Chen's recommendation to obtain surgery.

### 4. *The 2010 Accident*

The court held an Evidence Code section 402 hearing on the County's proffer of evidence to impeach appellant's testimony that he had disclosed his complete medical history to Dr. Chen and Tam. Specifically, the County offered to show that in 2010, appellant had been hit by a car and had reported pain all over his body. Appellant confirmed that a 2010 traffic collision report listed his name, former address, and birth date, but claimed not to recall the reported accident. Appellant's counsel argued for exclusion of evidence concerning the 2010 accident on the ground that the County had disclosed no such evidence in response to appellant's form interrogatory No. 16.1, which asked the County to identify all evidence that any third party contributed to appellant's claimed injuries or damages. The court ruled the County could introduce evidence concerning the 2010 accident for impeachment.

After the hearing, appellant testified he did not recall being struck by a car in 2010, rolling up onto the hood of the car and smashing into its windshield, falling to the pavement, telling the investigating officer that he felt pain

everywhere in his body, or being taken to an emergency room. He confirmed he did not report such an accident to Dr. Chen or Tam.

The County called Long Beach Police Department officer Mark Mesun, who testified he investigated a 2010 car accident but recalled little about it and did not recognize appellant in court. He further testified the accident victim reported that he hurt everywhere after being struck by a car while running across a street. He identified the California identification number provided by the accident victim.

The County also called attorney Philip Allen, counsel for the MTA in appellant's separate lawsuit, who testified appellant produced his California identification card when Mr. Allen deposed him. Appellant's identification card, which was admitted into evidence, bore the same number provided by the 2010 accident victim.

### 5. *Expert Witnesses*

Appellant called Dr. Chen to testify about the cause of his injuries, his alleged future medical expenses, and the expenses appellant had already incurred for Dr. Chen's treatment. Dr. Chen testified that he was "strongly suspicious," based on X-rays performed in 2013 and 2016 and on the MRI results obtained in 2016, that the 2013 accident was the cause of injuries to appellant's cervical (neck) and lumbar (lower back) spine. He based this conclusion in part on his finding of significant progression in the X-ray results between 2013 and 2016, explaining that

11

the 2016 X-rays showed increased narrowing of the discs and increased formation of bone spurs.

Dr. Chen further testified that appellant would need surgery to remove both a disc herniation and a disc protrusion. Dr. Chen based this conclusion largely on his observation that the MRI results showed the disc herniation compressing a nerve. He estimated the cost of surgery to remove a disc as $90,500. He testified he did not know the total sum appellant owed him for past treatment, but confirmed that "around $12,000 sound[ed] accurate." Dr. Chen did not testify about the reasonableness of his bills, which were not offered into evidence.

On cross-examination, Dr. Chen confirmed that X-rays are insufficient for a reliable assessment of disc injuries, which requires MRI results. He further confirmed that the only MRI results he reviewed, which were obtained after the 2016 accident, suggested appellant's disc protrusion was recent. Although appellant told Dr. Chen the 2016 accident occurred, Dr. Chen knew no details about the accident and might have been able to give a more precise opinion if he had known them. Further, he had no information about appellant's medical condition prior to the 2013 X-rays other than what appellant told him. Appellant did not tell Dr. Chen he was struck by a car in 2010, which, if true, might have changed Dr. Chen's opinion about the cause of appellant's injuries. Confirming that he did not know what the bus struck during the 2013 accident or how hard it struck it, Dr. Chen disclaimed any intent (or qualification) to

12

opine on "biomechanical analysis," meaning the measure of force applied to a body.

Appellant also called chiropractor Tam, who testified that through his physical examination of appellant, he determined that appellant sustained sprains on his cervical and lumbar spine and on his left shoulder in the 2013 accident. When Tam asked if appellant had been in any previous accidents, appellant said he had not. Appellant's condition improved by 85 to 90 percent after his physical therapy with Tam. Tam testified appellant owed him $2,070. Tam's bills for the same sum were admitted into evidence.

The court allowed the County to call Dr. Wilson, but stated its intention to limit his testimony to impeaching Dr. Chen within the meaning of Code of Civil Procedure section 2034.310 and *Kennemur v. State of California* (1982) 133 Cal.App.3d 907 (*Kennemur*), cautioning the County that it would not be permitted to elicit rebuttal opinion. The County's counsel asked Dr. Wilson to identify a foundational fact upon which Dr. Chen relied that Dr. Wilson believed to be false or non-existent. In response, Dr. Wilson testified that Dr. Chen's opinion that the 2013 accident caused a disc pathology was not reasonable because appellant lacked "a presentation or a history of an injury that would support that there was any significant lumbar or any other major injury." Appellant moved to strike this testimony as exceeding the scope of permissible impeachment, but the

13

court denied the motion.[3]  Dr. Wilson then rephrased his prior testimony, asserting that Dr. Chen's opinion that the 2013 accident caused an injury to appellant's back was not "supported by the medical records or the mechanics or the initial findings or presentation." [4]  Dr. Wilson explained by testifying, inter alia, that 99 percent of disc protrusions are caused by degenerative change rather than trauma, referencing several vaguely identified research studies.

The County's counsel asked Dr. Wilson to identify an additional foundational fact on which Dr. Chen relied that Dr. Wilson believed false or non-existent.  In response, Dr. Wilson testified that Dr. Chen's finding of a significant change between the 2013 and 2016 X-rays, and his interpretation of that change as reflecting a traumatic event, were "not correct" and were not "supported by medical knowledge or medical literature."  He explained by testifying, inter alia, that a finding of significant change in

---

[3]  The court later granted appellant's motion to strike Dr. Wilson's testimony that appellant possibly sustained soft tissue injuries.  The court otherwise allowed Dr. Wilson's testimony, over repeated motions to strike and requests to lodge a standing objection, noting its view that appellant had preserved his objections to Dr. Wilson's testimony for appeal.

[4]  Dr. Wilson later rephrased this testimony again, asserting that Dr. Chen's finding of significant injury due to the 2013 accident was not medically substantiated by the MRI results, the X-rays, or the presentation of appellant's injury.

the X-rays would have required evidence of a bone fracture or major ligament disruption.

The County's counsel asked Dr. Wilson to identify "the third point that [he had] a difference of opinion on with Dr. Chen." Dr. Wilson responded by contrasting Dr. Chen's opinion that appellant would require future surgery to address his injuries resulting from the 2013 accident with Dr. Wilson's own determination, after examining appellant, that appellant "had no indications of needing surgery." He testified that appellant had no significant nerve compression, explaining on cross-examination that although the MRI results showed narrowing of a canal through which a nerve passed, the narrowing was insufficient to compress the nerve. He further testified that the American Academy of Orthopaedic Surgeons had found surgery generally unwarranted for back pain associated with degenerative disc disease.

Dr. Wilson further testified that although appellant might develop a need for surgery, the need would not be caused by the 2013 accident, which applied a lesser degree of force to appellant's back than he would have experienced picking up a heavy object from the trunk of a car. Dr. Wilson added that because the average person experiences greater forces multiple times per month, it would not be "fair" to attribute appellant's injuries to the 2013 accident.

### 6. *Closing Arguments*

At the conclusion of the parties' presentation of evidence, appellant moved into evidence the County's responses to requests for admission. When arguing, in closing, that the jury should find the County negligent, appellant's counsel relied solely on the County's admission of negligence. He further argued that the 2013 accident caused appellant's injuries, relying substantially on Dr. Chen's opinions.

In the County's closing argument, its counsel acknowledged that it had admitted the elements of negligence other than causation of damages, referencing CACI instruction No. 424 (negligence not contested).[5] The County's counsel commented that appellant was required to "prove that his injuries, if he had them, were caused by our bus accident in 2013 and that all of the future medicals, past medicals, pain and suffering, is all our fault." He argued that appellant had failed to meet this burden, reminding the jury, inter alia, that Dr. Wilson had testified that Dr. Chen's opinions were invalid, purportedly by explaining that they were based on false facts.

The County's counsel referred (erroneously) to evidence of bills from Dr. Chen for $1,200 or $1,020. He also

---

[5] The court's instructions to the jury were neither reported nor included in the appellate record. However, before appellant rested, the court stated without objection that it would deliver CACI No. 424.

16

mistakenly referred to bills from chiropractor Tam totaling $7,000, before correctly identifying the $2,070 total. He concluded his argument by asking the jury either to return a defense verdict or to award appellant only $1,020 for Dr. Chen's treatment and $2,070 for Tam's treatment.

Appellant's counsel requested a sidebar at the conclusion of the County's closing argument. He objected to an alleged misstatement of law by the County's counsel concerning the County's burden to prove a contributory or superseding cause. He also objected to opposing counsel's reference to $1,020 in bills from Dr. Chen, arguing it misstated Dr. Chen's testimony that appellant owed him around $12,000. Without ruling on the merits of the objections, the court declined to admonish the jury, deferring to appellant's counsel to argue the matters in rebuttal.

Appellant's counsel made no attempt to clarify Dr. Chen's testimony about his bills in rebuttal, instead merely noting that the jury instructions explained the burden of proof on contributing and superseding causes.

### 7. *Jury Deliberations and Verdict*

During its deliberations, the jury submitted a written request to be given "exactly how much medical expenses for Tam and Chen," asking, "[I]s it 2070 and 1200?" The court returned the following stipulated response: "The parties stipulate that Dr. Tam's bill for past medical expenses totals $2070. As to Dr. Chen, the court directs you to jury instruction #5011." CACI No. 5011 instructed the jury that

17

it could request a reading of testimony. The jury made no such request, instead returning a verdict five minutes after receiving the response. In response to questions posed by the parties' special verdict form, the jury answered, inter alia, that (1) the County was negligent; (2) the County's negligence was a substantial factor in causing appellant harm; and (3) appellant's total damages equaled $5,000, consisting of $3,270 in past medical expenses and $1,730 in past noneconomic loss. The court entered judgment on the verdict, from which appellant timely appealed.

## C. *Post-Trial Proceedings*

Appellant moved for a new trial on the amount of damages, arguing the jury's award was inadequate as a matter of law. Appellant also moved to recover costs of proof under Code of Civil Procedure section 2033.420, on the ground that he had proved matters the County had failed to admit in response to his requests for admission, viz., that the County was negligent and that its negligence caused him injury.[6] Finally, appellant claimed ordinary costs in original and amended memoranda of costs.

---

[6] Code of Civil Procedure section 2033.420, subdivision (a), provides that "[i]f a party fails to admit . . . the truth of any matter when requested to do so [in a request for admission], and if the party requesting that admission thereafter proves . . . the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in (*Fn. is continued on the next page.*)

The County filed its own memorandum of costs, along with a motion to be declared the prevailing party and awarded costs (including $25,497.50 in attorney's fees) under Code of Civil Procedure sections 998 and 1032. Separately, the County moved under Code of Civil Procedure section 1021.7 to recover $12,252.75 in attorney's fees incurred in connection with appellant's voluntarily dismissed cause of action for failure to summon immediate medical care.[7]

At a hearing on the parties' post-trial motions, the trial court denied appellant's motion for a new trial, reasoning, inter alia, that the jury could reasonably have discredited Dr. Chen's opinions. The court recalled Dr. Wilson's testimony that "the future surgery Dr. Chen advocated for would not be medically justified and would not be beneficial to [appellant]," commenting, "The jury heard that. I can only conclude that the jury believed it." The court also

_____

making that proof, including reasonable attorney's fees." The statute requires the court to grant the motion unless it makes any of four enumerated findings, including that "[t]he party failing to make the admission had reasonable ground to believe that that party would prevail on the matter" or that "[t]here was other good reason for the failure to admit." (*Id.* subd. (b).)

[7]     Code of Civil Procedure section 1021.7 provides that "[i]n any action for damages arising out of the performance of a peace officer's duties, brought . . . against a public entity employing a peace officer . . . the court may, in its discretion, award reasonable attorney's fees to the defendant or defendants as part of the costs, upon a finding by the court that the action was not filed or maintained in good faith and with reasonable cause."

19

denied appellant's motion for costs of proof, reasoning that the County had reasonable ground to believe it would prevail on the matters when it failed to admit them, and that there were other (unspecified) good reasons for the County's failure to admit them.[8]

---

[8] The trial court did not expressly consider whether appellant had proved breach of duty within the meaning of Code of Civil Procedure section 2033.420. It would have been within the court's discretion to find the matter not proved, due to the County's concessions regarding breach before and during trial and appellant's failure to present evidence on the matter other than the County's admission of negligence. (See *Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 864-868 [plaintiff not entitled to costs of proving defendants' fault for car accident where defendants conceded fault immediately before trial]; *Wagy v. Brown* (1994) 24 Cal.App.4th 1, 4, 6 [plaintiff not entitled to costs of proving negligence where defendant conceded negligence for purpose of arbitration].) The County did not concede that the 2013 accident caused appellant injury. However, the trial court's finding that the County had reasonable ground to believe, at the time it served its responses to appellant's requests for admission, that it would prevail on the matter was supported by the County's explanation that it was then aware of (1) appellant's denial of injury immediately after the accident; (2) the fact that out of the 17 other passengers, 15 reported no injury and the remaining two reported only a bruised knee and a stiff neck; (3) investigators' finding that the accident consisted of a low-speed scrape against a pillar; and (4) appellant's failure to seek medical care when in custody, aside from obtaining a court order for a medical examination with which he declined to proceed after learning a nurse practitioner would conduct it.

At the same hearing, the court granted the County's motions for prevailing party status, costs, and attorney's fees. The court interpreted Code of Civil Procedure section 998, subdivision (e) to allow the court to deduct costs (including attorney's fees) from appellant's damages award before determining which party prevailed, within the meaning of Code of Civil Procedure section 1032, by obtaining a net monetary recovery.[9] The court added $576 in undisputed costs incurred by appellant to his $5,000

---

[9] As appellant unsuccessfully argued before the trial court, the plain language of Code of Civil Procedure section 998 requires a court to find the judgment less favorable than the offer before deducting costs under that section from the damages award. (Code Civ. Proc., § 998, subd. (c)(1) ["If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff . . . shall pay the defendant's costs from the time of the offer"], *id.,* § 998, subd. (e) [authorizing deduction of costs "under this section" from the plaintiff's damages award if the plaintiff does not accept the defendant's offer and "fails to obtain a more favorable judgment or award"].) Absent deductions, appellant's judgment was more favorable than the County's offer -- the value of the offer was limited to $5,000, inclusive of costs, whereas the value of appellant's judgment included both the $5,000 damages award and appellant's undisputed preoffer costs. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2018) ¶ 12:655, p. 12(II)-48 ["[P]laintiff's *preoffer costs are included* [in the value of the judgment] in computing whether the judgment is 'more favorable' than the § 998 offer"], citing *Heritage Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1441.)

damages award. From this $5,576 sum, the court deducted $42,508.15 in costs claimed by the County (including $25,497.50 in attorney's fees), yielding a net monetary recovery of $36,932.15 in the County's favor.[10] The court relied on this net monetary recovery to declare the County the prevailing party. The court issued an order on the post-trial motions, from which appellant appealed, and entered a second judgment, this time for the County.

## DISCUSSION

### A. *Admission of Dr. Wilson's Testimony*

Appellant asserts the trial court abused its discretion in admitting testimony from Dr. Wilson that exceeded the scope of permissible impeachment by an undesignated expert. He further contends the erroneous admission of Dr. Wilson's testimony prejudiced him, as the jury's damages award suggests it believed Dr. Wilson's opinions that the

---

[10] The basis for the award of attorney's fees is unclear to the extent the award exceeded the $12,252.75 the County sought under Code of Civil Procedure section 1021.7. Costs allowable under Code of Civil Procedure sections 998 and 1032 include attorney's fees only to the extent separately authorized by other sources. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 12:648.5a, p. 12(II)-45 ["CCP § 998 does not provide greater rights to attorney fees than provided by the underlying statute or contract"]; Code Civ. Proc., § 1033.5, subd. (a)(10) [attorney's fees allowable as costs only when authorized by contract, statute, or law].)

22

2013 accident did not cause appellant's more serious injuries and that appellant would not require future surgery.

## 1. *Standard of Review*

"Except to the extent the trial court bases its ruling on a conclusion of law (which we review de novo), we review its ruling excluding or admitting expert testimony for abuse of discretion." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) "'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'" (*Ibid.*, quoting *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) Error in the admission of evidence is reversible only if there is a reasonable probability -- meaning a possibility that is more than abstract -- that the appellant would have obtained a more favorable result had the evidence been excluded. (*Wilson v. Southern California Edison Co.* (2018) 21 Cal.App.5th 786, 808 (*Wilson*); accord *Basham v. Babcock* (1996) 44 Cal.App.4th 1717, 1723-1724 [applying reasonable probability standard to reverse, due to erroneous admission of testimony concerning causation of injury from improperly designated expert]; cf. *Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1681-1684 [reversing due to erroneous admission of expert opinion testimony from percipient witness not designated as an expert, noting "[j]uror declarations suggest[ed] that some jurors may have been swayed by such testimony"], *id.* at

p. 1683, disapproved on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41.) A "'reasonable'" probability under this test is one sufficient to undermine the reviewing court's confidence in the outcome. (See *In re Richards* (2016) 63 Cal.4th 291, 312-313 (*Richards*).)

## 2. *Governing Principles*

Generally, on objection of any party who has "made a complete and timely compliance" with the expert exchange statute, the trial court "shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed," inter alia, to designate that expert in its expert witness list.[11] (Code Civ. Proc., § 2034.300.) The same exclusionary rule applies where "a party wishes to call an expert not included on the original list and the party has unreasonably failed to obtain permission to augment its list . . . ." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 8:1708, p. 8J-29, citing *Richaud v. Jennings* (1993) 16 Cal.App.4th 81, 85.)

Notwithstanding the foregoing exclusionary rule, a party "may call as a witness at trial an expert not previously designated by that party . . . [¶] . . . [¶] . . . to impeach the testimony of an expert witness offered by any other party at

---

[11] The County does not argue that appellant failed to make "a complete and timely compliance" with the expert exchange requirements.

the trial." (Code Civ. Proc., § 2034.310, subd. (b).) Although the term "impeach[]" is susceptible to an interpretation encompassing the offering of contrary opinion, permissible impeachment by an undesignated expert is narrower in scope. (See *Kennemur*, *supra*, 133 Cal.App.3d at pp. 921-922.) Indeed, the Legislature has codified the distinction between permissible impeachment and contrary opinion: "This impeachment may include testimony to the falsity or nonexistence of any fact used as the foundation for any opinion by any other party's expert witness, but may not include testimony that contradicts the opinion." (Code Civ. Proc., § 2034.310, subd. (b).) "[R]ather than broadly construing what a foundational 'fact' is, the term should be strictly construed by the trial court to prevent a party from offering a contrary opinion of his expert under the guise of impeachment." (*Kennemur*, *supra*, at p. 924; see also *id.* at pp. 911-912, 922, 924-925 [defense expert's opinion that tire tracks crossing road's centerline were made by plaintiff's car -- in support of a further opinion that the plaintiff caused an accident by abruptly steering into oncoming traffic -- was not a foundational fact but instead a subordinate opinion based on foundational facts, viz., photographs of the tracks and a percipient witness's testimony that the plaintiff steered across the centerline].)

Courts applying this limitation have consistently affirmed the exclusion of testimony opining that an opposing expert misunderstood or misapplied the relevant body of expert knowledge. (See *Collins v. Navistar, Inc.* (2013) 214

Cal.App.4th 1486, 1495-1496, 1517 (*Collins*) [affirming exclusion of testimony that opposing expert's statistical opinions were inaccurate, and that databases on which she relied were unreliable due to omitting data]; *Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1066-1068 (*Mizel*) [affirming exclusion of testimony that a person will smell of alcohol only after a particular level of alcohol consumption, where opposing expert had denied awareness of studies supporting that conclusion and relied on personal education and experience to opine otherwise]; *Howard Contracting, Inc. v. G.A. MacDonald Construction Co., Inc.* (1998) 71 Cal.App.4th 38, 53-54 (*Howard*) [affirming exclusion of testimony that opposing expert misapplied accepted formula in calculating construction delay damages, which trial court deemed "impermissible contrary opinion concerning accepted accounting practices used in applying" the formula]; *Fish v. Guevara* (1993) 12 Cal.App.4th 142, 145-146 (*Fish*) [affirming exclusion of testimony that opposing experts, applying their knowledge, training, and review of third-party studies rather than direct observation, inaccurately assessed permeability rate of soil].)

### 3. *Analysis*

We agree with appellant and the trial court that Dr. Wilson's testimony should have been limited to impeachment within the meaning of Code of Civil Procedure section 2034.310. Although the County does not expressly argue otherwise, it asserts, with no citation to authority,

that the trial court's admission of Dr. Wilson's testimony "was consistent with . . . the fundamental interests of justice in permitting [the County] to respond to late-disclosed evidence," viz., evidence of appellant's need for surgery. Before the trial court, the County represented that it retained Dr. Wilson in response to appellant's disclosure of his intent to claim that the 2016 accident exacerbated injuries sustained in the 2013 accident. Both this anticipated claim and Dr. Chen's recommendation for surgery were discussed on the record approximately six months before trial, when Judge Kalin suggested the County might be entitled to retain an opposing expert and the parties stipulated to reopen discovery. The County had ample opportunity in the intervening months -- during which appellant confirmed at deposition that he might obtain the recommended surgery, and appellant's counsel relied on expected damages for that surgery in settlement negotiations -- to move to augment its expert witness list to add Dr. Wilson.[12] So far as the record discloses, the County neither made such a motion nor offered Dr. Wilson for deposition. The court thus properly invoked the limitation of Code of Civil Procedure section 2034.310.

---

[12] Neither the record nor the County's appellate brief discloses why the County did not seek to call the expert witness already designated on its list, Dr. Tauber, whom the County reportedly retained to testify regarding, inter alia, appellant's need for future treatment.

27

However, the court exceeded its discretion in applying that limitation, liberally construing the term "foundational fact[]" in a manner that allowed the County to offer contrary opinions under the guise of impeachment. Dr. Wilson contradicted Dr. Chen's causation opinion -- viz., that the 2013 accident caused appellant significant injury -- by opining that it was not medically substantiated by the X-rays, the MRI results, and the presentation of appellant's injuries. Dr. Wilson supported this contrary causation opinion with two additional opinions, testifying (1) that "medical knowledge [and] medical literature" supported neither Dr. Chen's finding (in support of his causation opinion) of a significant change between the 2013 and 2016 X-rays, nor his interpretation of that change as reflecting a traumatic event; and (2) that the force applied to appellant's body in the 2013 accident was insufficient to cause appellant's injuries.

These contrary opinions did not concern the falsity or non-existence of foundational facts on which Dr. Chen relied. Dr. Chen expressly disclaimed any opinion on the degree of force involved in the 2013 accident, admitting he did not know how hard the bus struck the pillar. Thus, Dr. Wilson's opinion regarding the degree of force had no relation to the factual foundations of Dr. Chen's opinions. In delivering his other causation opinions, Dr. Wilson similarly failed to challenge the veracity of the facts on which Dr. Chen relied. Instead, he testified to the effect that Dr. Chen misunderstood or misapplied medical science; Dr. Wilson then

28

advanced a contrary understanding of that science based, inter alia, on research studies purportedly establishing that 99 percent of disc protrusions are caused by degenerative change and unspecified sources establishing that a bone fracture or major ligament disruption is necessary to find a significant change between X-rays.  This testimony exceeded the scope of permissible impeachment.  (See *Collins*, *supra*, 214 Cal.App.4th at pp. 1495-1496, 1517; *Mizel*, *supra*, 93 Cal.App.4th at pp. 1066-1068; *Howard*, *supra*, 71 Cal.App.4th at pp. 53, 54; *Fish*, *supra*, 12 Cal.App.4th at pp. 145-146.)

Dr. Wilson also contradicted Dr. Chen's opinion that appellant would require future surgery, opining, in response to a request from the County's counsel to identify "a difference of opinion" with Dr. Chen, that appellant "had no indications of needing surgery."  Dr. Wilson supported this contrary opinion with matters unrelated to the factual foundations of Dr. Chen's opinion, including his independent examination of appellant (referenced only generally, without mention of any factual findings contrary to those on which Dr. Chen relied) and a purported conclusion of the American Academy of Orthopaedic Surgeons that surgery is generally unwarranted for back pain associated with degenerative disc disease.  As the trial court acknowledged in denying appellant's motion for a new trial, the thrust of Dr. Wilson's testimony on this point was that the recommended surgery "would not be medically justified and would not be beneficial to [appellant]."  As noted, disagreement with an opposing

29

expert's understanding or application of medical science exceeds the scope of permissible impeachment. (See *Collins, supra*, 214 Cal.App.4th at pp. 1495-1496, 1517; *Mizel, supra*, 93 Cal.App.4th 1059 at pp. 1066-1068; *Howard, supra*, 71 Cal.App.4th at pp. 53-54; *Fish, supra*, 12 Cal.App.4th at pp. 145-146.)

In contrast, Dr. Wilson's testimony that the MRI results did not show nerve compression permissibly impeached Dr. Chen's testimony regarding what the MRI showed -- a foundational fact relevant to Dr. Chen's medical opinions. (See *Stark v. City of Los Angeles* (1985) 168 Cal.App.3d 276, 281 [undesignated expert permissibly impeached opposing expert by testifying to the falsity of the opposing expert's description of a police siren's audibility range, on which the opposing expert relied to opine that the plaintiff likely would not have heard the siren even if the police had activated it], superseded by statute on another ground as stated in *Thomas v. City of Richmond* (1995) 9 Cal.4th 1154, 1161-1162; cf. *Howard, supra*, 71 Cal.App.4th at p. 54 [although undesignated experts were properly barred from contradicting an opposing expert regarding accepted accounting practices used in applying a formula, permissible impeachment could have included testimony challenging the accuracy of the opposing expert's calculations or providing substitute figures]; *Kennemur, supra*, 133 Cal.App.3d at p. 925 [where defense expert relied on photographs of tire tracks to opine that tracks were made by plaintiff's car, permissible impeachment could have

included testimony "that the photographs were false, i.e., that they did not accurately depict the accident scene"].) As explained, however, Dr. Wilson's testimony went well beyond this permissible impeachment of a foundational fact.

We reject the County's argument that Dr. Wilson permissibly impeached Dr. Chen by testifying to the "absence of any evidence" supporting his opinions. The argument relies on the implicit premise that "the existence of supporting evidence" is a foundational fact. Such a broad, abstract interpretation of the term would render the statutory distinction between impeachment and contrary opinion meaningless, giving parties free rein to disregard the expert disclosure requirements and thereby deprive their opponents of crucial opportunities for pretrial discovery. (See *Kennemur, supra,* 133 Cal.App.3d at p. 924 [liberal interpretation of "foundational fact" would thwart legislative intent for parties to receive reasonable notice of opposing expert testimony]; *Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 951 [the Legislature enacted expert disclosure requirements in response to the need for pretrial discovery with respect to expert witnesses, which is greater than with respect to lay witnesses], citing *Bonds v. Roy* (1999) 20 Cal.4th 140, 147.)

Notably, the County does not argue that if Dr. Wilson's testimony was improperly admitted, any error was not prejudicial. Nor could it. Dr. Wilson's contrary causation opinions addressed the core issues of the County's defense, viz., the extent to which the 2013 accident caused appellant's

injuries and the extent of those injuries. The County presented little evidence on the issues aside from Dr. Wilson's opinions, instead focusing on impeaching appellant's witnesses. Further, Dr. Wilson's contrary opinion regarding appellant's need for surgery addressed the largest component of appellant's claimed damages -- Dr. Chen estimated the cost of a single of two recommended surgeries as $90,500, far exceeding the bills for past treatment to which Dr. Chen and Tam testified. In explaining its denial of appellant's motion challenging the adequacy of the damages award, the trial court concluded that the jury appeared to have believed Dr. Wilson's opinion that the recommended surgery "would not be medically justified and would not be beneficial to [appellant]." On this record, we cannot be confident the jury would have returned the same verdict had the trial court excluded Dr. Wilson's contrary opinions.[13] (See, e.g., *Richards*, *supra*, 63 Cal.4th at pp. 312-313; *Wilson*, *supra*, 21 Cal.App.5th at p. 808.)

---

[13] Even had the trial court excluded Dr. Wilson's contrary opinions, the court would not have been compelled to grant appellant's motion challenging the adequacy of the damages award. (See, e.g., *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1415-1416 [trial court's denial of new trial motion based on inadequate damages must be affirmed unless the evidence, lacking substantial conflict, compels the conclusion that the motion should have been granted].) As noted, there was no need to exclude Dr. Wilson's testimony that the MRI results did not show nerve compression, on which the jury could have relied to discredit Dr. Chen's recommendation for surgery. Additionally, (*Fn. is continued on the next page.*)

Finding the error prejudicial, we reverse the judgment on the verdict and remand for a new trial on all issues. We deny appellant's request to limit retrial to the amount of damages due to the centrality of the causation issue to the parties' disputes concerning both liability and damages. (See *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 285-286 (*Liodas*).) Depending upon the parties' actions on remand, the County may have the opportunity to permissibly introduce Dr. Wilson's contrary opinions -- or similar opinions from another expert -- at retrial. (See *Hirano v. Hirano* (2007) 158 Cal.App.4th 1, 5, 8 [trial court prejudicially erred in barring party from calling expert

the County effectively impeached Dr. Chen's causation opinions by eliciting concessions about the limitations of the information upon which Dr. Chen relied. For instance, Dr. Chen admitted that he knew no details about the 2016 accident; that the only MRI results were obtained after the 2016 accident; that MRI results are essential to assessing disc injuries; and that the MRI results suggested that one of the indications for surgery had developed recently. Appellant himself testified he was injured in the 2016 accident and contradicted his own descriptions of how his body struck the interior of the bus during the 2013 accident. Moreover, Tam billed appellant no more than $2,070, and Dr. Chen's testimony that "around $12,000 sound[ed] accurate" was vague, unsupported by documentary evidence, and unaccompanied by any testimony or other evidence establishing that his bills reflected the reasonable value of his services. (See *Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1330 ["[T]he measure of medical damages is the lesser of (1) the amount paid or incurred, and (2) the reasonable value of the medical services provided"].)

witnesses at retrial on the basis of that party's failure to timely exchange expert witness information before former trial, where neither party served new demand for expert exchange after reversal of former judgment]; see also *id.* at p. 9 ["[F]ollowing reversal of a prior judgment, . . . the parties are entitled to change expert witnesses . . . [or to] elect to use an expert when they had not done so before"].)

## B. *Additional Contentions of Error at Trial*

To assist the parties and the court, we address other alleged errors regarding issues likely to arise on retrial. (See *Liodas*, *supra*, 19 Cal.3d at p. 286; Code Civ. Proc., § 43.) We find no merit in appellant's contention that the County's counsel misstated the law by arguing that appellant had the burden to prove that the 2013 accident caused the injuries for which he claimed damages.[14] Counsel permissibly highlighted appellant's burden, as the plaintiff, to prove the County's negligence *caused* his injuries, without denying a defendant's burden, after the plaintiff has proved his negligence to be one cause among others, to limit his liability for damages by proving the apportionment of fault among multiple causes. (See *Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1316, 1322 [trial court, in

---

[14] Because there is no reason to expect the County's counsel to again refer, at retrial, to $1,200 or $1,020 in expenses for Dr. Chen's treatment, we decline to address appellant's contention that these references were prejudicial misstatements of the record.

erroneously granting nonsuit to defendants whom the plaintiff had proved responsible for two of three concurrent causes of his indivisible injury, "confused the issue of damage apportionment, which was not plaintiffs' burden, with the requirement which plaintiff did successfully satisfy, which was to provide evidence that defendants' negligence, to a reasonable medical *probability*, was *a* cause of plaintiff's damage"].) In any event, appellant cannot show prejudice because he neither alleges error in the jury instructions explaining the burdens of proof nor rebuts the presumption that the jury followed them. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804 [recognizing presumption].) Indeed, his own counsel reminded the jury of the instructions after the alleged misstatement of law.

Nor do we find error in the admission of evidence concerning the 2010 accident. The County produced sufficient evidence identifying appellant as the victim of the 2010 accident to establish the accident's relevance as impeachment of appellant's testimony that he had reported his complete medical history to Dr. Chen and Tam. Contrary to appellant's contention, the County's failure to identify Officer Mesun in response to form interrogatory No. 16.1 did not require exclusion of his testimony, given that appellant identified no applicable court order and no evidence that the County's failure was willful. (*Mitchell v. Superior Court* (2015) 243 Cal.App.4th 269, 272 ["[E]xclusion of a party's witness for that party's failure to identify the witness in discovery is appropriate only if the omission was

35

willful or a violation of a court order compelling a response"].)

/ / /

/ / /

/ / /

## DISPOSITION

We reverse the judgment on the verdict and remand for a new trial on all issues, with instructions to the trial court to vacate its order on the parties' post-trial motions and the judgment entered thereon.  Appellant is awarded his costs on appeal from the judgment on the verdict.  To the extent the parties incurred segregable costs on appellant's appeal from the order on the parties' post-trial motions, they shall bear their own costs.

**CERTIFIED FOR PUBLICATION**


MANELLA, P. J.


We concur:




COLLINS, J.




CURREY, J.