Filed 6/18/25  Angel v. Fernandez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GENEVIEVE V. ANGEL,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALVIN BAUTISTA FERNANDEZ,<br><br>Defendant and Appellant. | B331102<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV22693) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Scheper, Judge.  Affirmed.

Murrin Law Firm, J. Owen Murrin, and Breana A. Ha for Defendant and Appellant.

Law Offices of J. Steven Kennedy and J. Steven Kennedy for Plaintiff and Respondent.

————————————

This appeal is from a judgment quieting title to real property in favor of respondent, Genevieve Angel, against her former husband, appellant Alvin Fernandez. Fernandez contends the trial court erred by limiting his counsel's cross-examination of Angel and excluding some of his evidence. He also contends substantial evidence does not support the judgment, that he was entitled to a new trial, and that this court should grant him relief under Code of Civil Procedure section 473. We find no error, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The parties' marriage and divorce.

Angel and Fernandez were married in 1998 and have two adult children, George and Shannon. During their marriage, Angel and Fernandez bought a home located at 4803 Hayter Avenue, Lakewood, California (the Hayter property). They took title to the Hayter property as Genevieve Fernandez and Alvin Fernandez, wife and husband as joint tenants.

Angel filed a petition for dissolution of the marriage in 2010, and the family court entered a divorce degree in February 2011. Pursuant to the divorce decree, Angel's name was restored to Genevieve Angel, and Angel was awarded the Hayter property, one vehicle, and Chase Bank accounts ending in 0221 and 4647. Fernandez was awarded a second vehicle and a Chase bank account ending in 0537. Fernandez was ordered to pay Angel child support of $1,000 per month.

Angel testified that after the divorce, she deposited her monthly paychecks into the 0221 account, from which she paid her bills. She did not remove Fernandez's name from the account because Fernandez said he would deposit child support payments

2

into it; Angel testified, however, that Fernandez did not deposit any money into the 0221 account after the divorce. Angel said she and Fernandez remained friendly after the divorce and continued to co-parent their children and to travel together because they "have two kids, and it's important for us to be civil to one another in the best interests of our kids." However, Angel said she and Fernandez did not live together and were not intimate.

Fernandez testified that although he and Angel divorced in 2011, they continued to live together in the Hayter property as intimate partners until 2020. He said he did not pay child support because his salary was paid into a joint bank account to which Angel had access. He further said all the bank accounts maintained by the couple prior to the divorce—both those awarded to him and those awarded to Angel—remained joint accounts after the divorce.

## II.   The Hayter property.

Although Angel was awarded the Hayter property in the dissolution proceeding, she did not record a certified copy of the dissolution judgment until May 2021. As a result, the property continued to appear jointly titled in the public record.

In 2017, Angel applied for a refinance loan on the Hayter property in order to pay her daughter's college tuition and to help her son start a business. Angel applied for the loan in her name alone. The loan was approved, and a notary public was sent to Angel's house on July 5, 2017 to witness her signature on the loan documents.

Prior to arriving, the notary told Angel that Fernandez had to be present for the signing. Angel testified that she did not understand why Fernandez's presence was required, but she

3

wanted to comply with the lender's requirements and so she asked Fernandez to be present.  The notary brought all of the loan documents and told Angel where to sign.  Among those documents was a grant deed to the Hayter property that purported to transfer the Hayter property from "Genevieve V. Angel, an unmarried woman, who acquired title as Genevieve Fernandez[,] and Alvin Fernandez, an unmarried man, who acquired title as Genevieve Fernandez and Alvin Fernandez, wife and husband as joint tenants" to "Genevieve V. Angel, an Unmarried Woman[,] and Alvin Fernandez, an Unmarried Man, as joint tenants."  Both Angel and Hernandez signed the grant deed, which Stearns Lending recorded in July 2017.

Angel testified that she was not aware that she had signed a grant deed and had not intended to sign a deed or to transfer an interest in the Hayter property to Fernandez.  Angel said that both before and after the 2017 refinance, she made all the mortgage payments on the Hayter property and paid the property taxes, homeowners insurance, utilities, and general maintenance expenses.  She also paid about $19,000 to remodel the kitchen and a bathroom.  Angel said Fernandez did not contribute to the mortgage or to any maintenance expenses after the divorce.

Fernandez testified that he and Angel refinanced the Hayter property together in 2017, and that he believed he had an interest in the house when he signed the refinance documents.  He also testified that after the refinance, he made some of the mortgage payments and paid for utilities, groceries, insurance, and property taxes.  He said that from 2011 to 2022, money from his account was transferred to the 0221 account "constantly."

Angel said she became aware of the 2017 grant deed when she began looking into a further refinance of the Hayter property

4

in 2019. Angel spoke to a loan servicer, who told her that the 2017 deed had added Fernandez to the title. The loan servicer suggested that Angel ask Fernandez to sign a quitclaim. Angel prepared a document, which Fernandez signed on March 16, 2020. The document said: "I am signing the Deed of Trust and other Specialty Warranty Deed over to Genevieve V. Angel, and I do not expect to be paid any amount in the present and future – of the sale for the home on 4803 Hayter Avenue, Lakewood, California, 90712 (Tract # 17220 Lot 14). . . . Genevieve V. Angel is duly awarded the home as noted in our Divorce Agreement, and . . . we are no longer joint tenants at this address."

Angel attempted to record the document Fernandez had signed but was told it was not in proper form. She then obtained a quitclaim form and asked Fernandez to sign it. He refused. Subsequently, Angel hired a lawyer who made a written request to Fernandez to sign the quitclaim. Fernandez again refused and asserted an interest in the Hayter property based on the 2017 deed.

On the advice of an attorney, Angel obtained a certified copy of the dissolution judgment and recorded it on May 14, 2021. She then signed a grant deed referencing the award of the Hayter property to her in the dissolution judgment, and she recorded the grant deed on May 27, 2021, conveying title to "Genevieve V. Angel, an unmarried woman."

On May 26, 2021, Fernandez sent a letter to Coldwell Banker, the bank through which Angel was trying to restructure the mortgage loan. In relevant part, the letter said: "It has come to my recent attention that you have or continue to attempt to act as the agent/broker for the loan, sale, or other actions pertaining to the [Hayter property]. This shall serve as notice that I am and

have been the current co-owner in joint tenancy with Genevieve Angel of the Hayter home. I have discovered that Ms. Angel recorded a grant deed for the Hayter home as her sole and separate property, as an unmarried woman on May 20, 2021. As the Hayter home is held in joint tenancy with Ms. Angel and me, as co-owners, I did not sign nor authorize any deed transferring my interest to Ms. Angel. . . . I have never authorized, nor do I currently authorize, any transfer, refinance, and/or sale of the Hayter home . . . . Any attempts to transfer, sell, assign, or refinance the home is/was without my explicit, written, and notarized authorization and thus constitutes fraud."

## III. The present action.

### A. Complaint and cross-complaint.

In June 2021, Angel filed the present action seeking an order canceling the 2017 deed and quieting title in the Hayter property. Fernandez filed a cross-complaint against Angel alleging a variety of torts, including stalking, intentional infliction of emotional distress, and battery. The matter was set for a final status conference on January 20, 2023, and for trial on January 30, 2023.

In December 2022, Fernandez filed an ex parte application to continue the trial on the grounds that discovery was ongoing and additional defendants had recently been named in the cross-complaint. The trial court denied the motion to continue the trial of Angel's complaint, severed Fernandez's cross-complaint for trial, and stayed the cross-complaint.

### B. Fernandez's attempt to file an amended exhibit list.

Under rule 3.25(f)(1) of the Los Angeles Superior Court (LASC) Local Rules, trial exhibit and witness lists must be filed at least five days prior to the final status conference. Because the final status conference in this matter was set for January 20, 2023, exhibit lists and witness lists were due no later than January 15, 2023.

Angel filed her exhibit and witness lists on January 13, 2023. Fernandez filed his exhibit and witness lists on January 19, 2023, one day before the final status conference, and he filed supplemental exhibit and witness lists on January 23, 2023.

The court continued the trial to February 27, 2023, and then to March 6, 2023.

On the first day of trial on March 6, 2023, the court noted that Fernandez's exhibit numbers were duplicative of Angel's, and it directed Fernandez's counsel to resubmit a properly numbered exhibit list. Fernandez's counsel submitted a renumbered exhibit list that evening, and then attempted to file an amended exhibit list with additional exhibits the following day. The trial court declined to accept the amended exhibit list, telling counsel: "I'm not going to allow that, Mr. Fu. You have had ample time to comply with the Rules of Court in terms of submitting any exhibit list. They were due five days before the final status conference. They weren't filed timely then. I accepted this and now I'm accepting even a second one, but I won't accept a third one. So you'll have to stand on what you filed last night.

Fernandez's counsel responded that it was "imperative" that he be allowed to introduce exhibits missing from the

previously filed exhibit list.  The court replied:  "I'm not going to entertain that, Mr. Fu.  It's the second day into a trial.  This was due long ago.  So the last thing I have is whatever you filed yesterday at 7:06 p.m.  And if there's something missing from that, you will not be permitted to introduce it."

C.    **The trial court's order striking defendant's counsel's cross-examination of Angel.**

Plaintiff's counsel conducted his direct examination of Angel on the first day of trial, and defendant's counsel began his cross-examination the same afternoon.  When the proceedings resumed the next morning at 10:00 a.m., neither Fernandez nor his counsel, Eugene Fu, was present, and the court clerk indicated there had been no communication from them.  The court said it would give counsel 15 minutes and then would conclude the proceedings if counsel had not appeared.  At 10:15 a.m., the court took the bench and noted that there still had been no appearance by Fernandez or his attorney:

"The Court:  Again on the Angel versus Fernandez matter.  Mr. Kennedy [Angel's counsel] is here with his client.  There has been no appearance by defendant or defendant's counsel.  I believe I was advised by my staff that some unidentified person stepped into the courtroom to say Mr. Fu was on his way.  We have had no communication from him, and he's still not here.  [¶]  So Mr. Kennedy, I guess I'll leave it up to you.  I'm prepared to rule in favor of your client, but I guess that at some point this morning Mr. Fu is going to come stumbling in here, and then we're going to have to face a motion to set aside, et cetera, et cetera.  Or we can just wait.  [¶]  The court is prepared to find that Mr. Fu has waived his right to examine Miss Angel any further and strike the cross-examination that he did.  And then if

you want to put on any further witnesses or evidence, you'd be permitted to do so. And if he's here, well, then I guess we hear his defense. What are your thoughts?

"Mr. Kennedy: Well, I kind of would hate to conclude this and then follow with a lot of motions and things like that. I think I would rather give him a chance to show up today, and –

"The Court: The door is opening.

"Mr. Fu: Good morning, Your Honor. I'm sorry.

"The Court: It is 10:16. Mr. Fu has just arrived. You will not be permitted to cross-examine Miss Angel any longer, Mr. Fu, and I will strike the cross-examination that did occur for your failure to appear, the failure to even contact the court to let us know. I cannot understand why you would be 16 minutes late as opposed to 16 minutes early. [¶] So at this time, plaintiffs may call their next witness.

"Mr. Kennedy: No further witnesses for plaintiff, Your Honor.

"The Court: All right. Defendant may call their first witness."

Subsequently, on its own motion, the court reconsidered its ruling and said it would consider the previously conducted cross-examination of Angel.

### D.     The trial court's exclusion of Richard Boutsady.

On the second day of trial, Fernandez attempted to call as a witness Richard Boutsady, who worked for Stearns Lending. Angel's attorney objected that Boutsady was not named on Fernandez's witness list. The trial court excluded Boutsady's testimony, telling counsel, "If you want to call him in your case in chief, he has to be on the witness list."

### E. The trial court's findings.

The parties rested on the third day of trial. After hearing closing argument, the court made oral findings for Angel, as follows:

"So I think the starting place is the dissolution of Miss Angel and Mr. Fernandez's marriage in 2011. It is quite clear from that, that the property, the Hayter Street property, was awarded to Miss Angel as her separate property. I believe Mr. Fernandez testified that there was a mediator involved in this, which would be consistent with the court's understanding of how family law proceedings work when the parties are unrepresented.

"There seems to be some suggestion that Miss Angel created this document and that Mr. Fernandez either didn't read it or didn't agree with it, because he didn't agree with the divorce. It's ironic, Mr. Fu, that you point out that Miss Angel supposedly didn't read things when your client repeatedly said he didn't read things, even things he signed under oath.

"So the property was ordered to Miss Angel. It was approved by the judge in this court. I am confident that no judge would sign off on a judgment that included a stipulation regarding a separation of assets between parties who are unrepresented without assuring himself or herself that everyone knew exactly when they were signing off on.

"It seem[s] to me the problem began because neither plaintiff nor defendant seemed to have behaved as if the separation was complete and final. In particular, as we know, the property was not retitled in the name of Miss Angel as her sole and separate property, and it also appears that the bank accounts were never retitled by either party. [¶] And then that

10

testimony has been, to varying degrees, Mr. Fernandez was at the Hayter house at times. Miss Angel testified that she did not want to keep him from having a relationship with the children, and so she allowed him to be there, but he wasn't living there. So I think that there were some unfortunate missteps by Miss Angel leading up to this action. . . .

"It seems to me clear under the law and the facts of this case that the lender's actions in connection with the loan for the refinance, which was happening in 2017, whatever they did, could not possibly, in my view, have created an interest in the property in favor of Mr. Fernandez absent an intent by Miss Angel to grant him one.

"I note in th[is] regard that the grant deed at issue references for valuable consideration. There's been no evidence that any consideration changed hands between Mr. Fernandez and Miss Angel, for him to recover any portion or any interest in the property. So whatever, as I said, that the lender may have done in terms of how they felt it was proper to retitle the property, in my view, cannot create an interest where one was not intended. . . .

"Again, the problem, I think, began by her failure to promptly record the dissolution and . . . have the matter, the property retitled in her own name.

"Likewise, whatever the relationship was between Miss Angel and Mr. Fernandez after that point, whether he was living there or not, whether there were discussions that the children would get the property someday, et cetera, cannot create a property interest. Obviously, the statute of frauds would require any conveyance of a property interest to be in writing. So I find

all of that testimony, for the most part, not helpful and not relevant to the court's determination.

"It does seem to me that, without question, Mr. Fernandez knew he longer owned the property. . . .

"The bank records, which were discussed at length, do not demonstrate that Mr. Fernandez paid for the mortgage or other household expenses.  He pointed to a handful of deposits that came from the 0537 account to the 0221 account.  They were far dwarfed by the number of checks that Miss Angel was writing for the mortgage and the other payments.

"And lastly, the March 2020 disclaimer, which the defendant signed, again claiming he did not read it, indicates his understanding that the house was solely given to or awarded to Miss Angel by way of a divorce decree, which is actually mentioned in that letter.

"So as I said, I'm not sure that . . . even if the court believed the testimony that the defense presented, it would not change the court's feeling that this matter must go in favor of the plaintiff. But as a matter of fact, I found the defendant completely lacking in credibility . . . .

"I see a lot of cases that involve family members, one pitted against the other, and I always find them very sad.  This one seems particularly so, since it appears to me that Mr. Fernandez has gone out of his way to ruin his former wife's relationship with her family.  He has attempted to describe her as a flake, as I mentioned, that she can't hold a job, which is completely inconsistent with the evidence.

"He has pointed out that she signed things which she didn't read, which he countless times said the same thing.  The accusation that she has been violent, and yet I would be asked to

believe that even in spite of these multiple, ongoing violent outbursts by Miss Angel, the defendant continued to live at the Hayter house and continued to be intimate with her. It's preposterous, and I don't believe it."

## F.     Statement of decision and judgment.

The trial court issued a statement of decision and judgment on June 6, 2023. The statement of decision largely repeated the court's oral findings, and additionally found as follows:

"Defendant's evidence utterly failed to prove that he had any interest whatsoever in the Hay[t]er property. The dissolution judgment awards Plaintiff the property. . . .  [¶] Plaintiff provided bank records and other documents demonstrating that she paid all of the mortgage payments, property taxes, homeowners insurance and utilities both before and after the refinance. Exhibits 15 and 16 are bank statements from Plaintiff's Chase bank account ending in 0221. Both Plaintiff and Defendant are named on the account. Defendant testified that there were four joint bank accounts and they each maintained control over all four accounts even after the divorce. Defendant testified that his paychecks were deposited into the Chase account ending in 0537 and that Plaintiff used those funds to make the mortgage payments. Defendant provided no evidence to support this assertion. [Fn. omitted.] A review of the bank statements shows a handful of transfers between account 0221 and 0537. In fact, Defendant could only point to five transfers into account 0221 from account 0537. Of those five, four were in an amount between $1,700 and $1,300 which was insufficient to cover the mortgage. Likewise, Defendant's claim that he paid property taxes and homeowners insurance was unsupported by any documentary evidence.

13

"Defendant has absolutely no claim, legal or otherwise, to the Hayter property."

The judgment voided the 2017 grant deed and struck it from the Los Angeles County Recorder's records; found that Angel was the sole legal and equitable owner of the Hayter property and that Fernandez had no right, title, or interest in the Hayter property; and permanently enjoined Fernandez from asserting any claim to the Hayter property.

Fernandez filed a notice of appeal from the judgment on June 22, 2023.[1]

## DISCUSSION

Fernandez's primary contention on appeal is that the trial court erred by not permitting him to cross-examine Angel and by excluding certain bank records and the testimony of Richard Boutsady. Fernandez also contends that this court should grant a new trial, that he is entitled to relief under Code of Civil Procedure section 473, and that the trial court's findings are not

---

[1] On March 12, 2025, this court issued an order to show cause why the appeal should not be dismissed as premature because the judgment did not adjudicate Fernandez's cross-complaint. On April 28, 2025, Fernandez advised that he had voluntarily dismissed his cross-complaint with prejudice on April 22, 2025. In light of the dismissal, we exercise our discretion to treat the notice of appeal, which was filed before the dismissal of the cross-complaint, as a premature but valid appeal from a final judgment. (See Cal. Rules of Court, rule 8.104(d)(2) ["reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment"].)

14

supported by substantial evidence.  Each of these claims lacks merit, as we discuss.

I.  **The trial court did not abuse its discretion by excluding Fernandez's cross-examination of Angel or by excluding Fernandez's bank records and Boutsady's testimony.**

As noted above, the LASC Local Rules require parties to file and serve trial exhibit and witness lists at least five days before the final status conference, and they provide that failing to timely exchange and file these items "may result in not being able to call witnesses, [or] present exhibits at trial."  (LASC Local Rules, rule 3.25(f)(1).)  The power to exclude witnesses or evidence under this rule arises out of the court's " ' "fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them.  [Citation.] . . . '. . . That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice.  [Citation.]' " ' " (*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 895–896.)

A trial court's ruling on the exclusion of evidence is reviewed for an abuse of discretion.  (*People v. Guenther* (2024) 104 Cal.App.5th 483, 525; *People v. Sanchez* (2016) 63 Cal.4th 411, 456.)[2]  A trial court abuses its discretion when its decision " 'exceeds the bounds of reason' " or is " 'arbitrary, capricious, patently absurd, or even whimsical.' " (*Doe WHBE 3 v. Uber*

___

[2]    To the extent that Fernandez contends that we should review the exclusion of this evidence under the de novo or substantial evidence standards of review, he is mistaken.

15

*Technologies, Inc*. (2024) 102 Cal.App.5th 1135, 1150.)  Put another way, " '[a] ruling that constitutes an abuse of discretion has been described as one that is "so irrational or arbitrary that no reasonable person could agree with it." ' " (*Ibid*.; see also *People v. Lamb* (2024) 16 Cal.5th 400, 424 [under abuse of discretion standard, appellate court will " 'not disturb the trial court's ruling unless it was arbitrary, capricious, or made in a " 'patently absurd manner that resulted in a manifest miscarriage of justice' " ' "].)

Even if an abuse of discretion is established, the error is reversible "only if there is a reasonable probability—meaning a possibility that is more than abstract—that the appellant would have obtained a more favorable result" had the evidence been admitted.  (See *Pina v. County of Los Angeles* (2019) 38 Cal.App.5th 531, 545; see also *People v. Pettie* (2017) 16 Cal.App.5th 23, 73 [error not reversible because appellants did not show "a reasonable probability of a different result if [excluded evidence] had been admitted"].)  This is so "because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

In the present appeal, Fernandez cites no authority for the proposition that the trial court abused its discretion by (1) excluding further cross-examination of Angel due to his and his counsel's late appearance on the second day of trial, (2) excluding Fernandez's bank records because they were not timely included in Fernandez's exhibit list, and (3) excluding

16

Boutsady's testimony.[3]  He therefore has failed to establish that the exclusion of this evidence was erroneous.  (See, e.g., *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' "]; accord, *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 ["failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error]".)

In any event, even if we were to conclude that the court abused its discretion in excluding further cross-examination and excluding Fernandez's exhibits and Boutsady's testimony, Fernandez would have to demonstrate a reasonable probability of a more favorable outcome absent the error.  Because the error asserted here concerns the exclusion of evidence, a showing of prejudice on appeal requires there to have been an adequate offer of proof made in the court below.  (Evid. Code, § 354, subd. (a) ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that:  . . .  [¶]  The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other

---

[3]     Fernandez suggests that the trial court erred by finding that he was represented by counsel when he first submitted his witness list on January 23, 2023.  The issue is immaterial to our analysis, and thus we do not address it.

17

means"]; *People v. Case* (2018) 5 Cal.5th 1, 44 [" ' "[T]o preserve an alleged error for appeal an offer of proof must inform the trial court of the 'purpose, and relevance of the excluded evidence . . . .' " ' "]; *Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83, 93–94 [" ' "Before an appellate court can knowledgeably rule upon an evidentiary issue presented, it must have an adequate record before it to determine if an error was made." [Citation.]' 'The offer of proof exists for the benefit of the appellate court. . . . The function of an offer of proof is to lay an adequate record for appellate review.' "].) Such offer of proof "must be specific. It must set forth the actual evidence to be produced and not merely the facts or issues to be addressed and argued." (*People v. Schmies* (1996) 44 Cal.App.4th 38, 53; accord, *McCleery v. City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1074 [a proper offer of proof would have "set[] forth the *evidence* to be presented through [the witness], the purpose for which such evidence was offered, its relevancy to the issues in the case, and the manner in which, and sources from which, [the witness] acquired the information he would impart"].)

These principles preclude reversal. Below, although Fernandez's counsel objected to the exclusion of his evidence, he gave the trial court no meaningful indication of what evidence he expected to elicit. Nor does he do so on appeal. For example, Fernandez asserts in his opening brief that had his counsel been permitted to cross-examine Angel, "her testimony would have corroborated the family dynamic," but he points to no support for this assertion. Similarly, he says that had Boutsady been permitted to testify, "he could have provided further evidence of the parties' intention as to the reason the loan application was made, and the parties' intention as to why Mr. Fernandez's name

remained on [the] title"—but he again cites nothing that would allow us to so conclude. Fernandez thus has not demonstrated that any allegedly erroneous exclusion of evidence was prejudicial.

## II.    Fernandez's remaining contentions lack merit.

Fernandez makes several additional contentions; none has merit.

First, Fernandez contends that the case should be remanded for a new trial on whether the parties entered into an oral agreement to share their assets under the principles set forth in *Marvin v. Marvin* (1976) 18 Cal.3d 660. But below, Fernandez neither asserted a *Marvin* claim nor moved for a new trial. Accordingly, the contention is forfeited. (See, e.g., *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 [" ' "An argument or theory will . . . not be considered if it is raised for the first time on appeal. . . . 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " ' "].)

Second, Fernandez contends that the judgment should be reversed under Code of Civil Procedure section 473 based on his attorney's " 'mistake, inadvertence, surprise or excusable neglect.' " Fernandez did not seek such relief below, however, and he may not do so for the first time on appeal. (See *R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 497 [party may not seek section 473 relief for the first time on appeal]; *In re Marriage of Brockman* (1987) 194 Cal.App.3d 1035, 1045, fn. 3 [same].)

19

Finally, Fernandez asserts that we should reverse the judgment because "there is substantial evidence to support a different result, which would allow Mr. Fernandez his rightful percentage ownership of the family home." A reviewing court may not, under the substantial evidence standard, " 'reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) Instead, we must uphold the trial court's determinations " 'if . . . supported by substantial evidence, *even though substantial evidence to the contrary also exists* and the trial court might have reached a different result had it believed other evidence.' " (*Ibid.*, italics added.) In other words, the question before us is whether the trial court's decision was supported by substantial evidence—*not* whether the evidence might also have supported a contrary decision. Fernandez thus has failed to demonstrate error under the substantial evidence standard of review.

## DISPOSITION

The judgment is affirmed.  Respondent Angel is awarded her appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.